578 A.2d 1292

**COMMONWEALTH of Pennsylvania**

v.

**Kathleen FRENCH, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 15, 1989.

Filed July 11, 1990.

Reargument Denied Sept. 18, 1990.

Helen A. Marino, Asst. Public Defender, Philadelphia, for appellant.

George S. Leone, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before WIEAND, BECK and MONTGOMERY, JJ.

BECK, Judge:

This is an appeal taken from a judgment of sentence imposed following a jury trial at which appellant was convicted of aggravated assault,[1] resisting arrest[2] and conspiracy[3]. After post-trial motions were denied appellant was sentenced to concurrent five-year terms of probation for aggravated assault and conspiracy. Sentence for resisting arrest was suspended. This appeal followed.

Appellant's convictions arose from events which occurred during the early morning hours in the Frankford section of Philadelphia. Police officer John Welsh was summoned to the scene of a fight. When he arrived he saw appellant Kathleen French and three companions assaulting a lone

1.  18 Pa.Cons.Stat.Ann. § 2702 (Purdon 1983).
2.  18 Pa.Cons.Stat.Ann. § 5104 (Purdon 1983).
3.  18 Pa.Cons.Stat.Ann. § 903 (Purdon 1983).

black man who was pinned to the ground and being beaten by his four assailants. Appellant's companions were James Moran, appellant's boyfriend, Elizabeth Quinn, appellant's sister and Michael Haughey, the sister's boyfriend.

Officer Welsh pushed appellant, Quinn and Moran back from their victim and then pulled Haughey off him. Meanwhile, three more police officers were arriving at the scene: Officers Stephan, Draft and Griffin. After the parties were separated, the police asked the man with whom appellant and her friends had been fighting whether he wanted to press charges. He stated that he did not, at which point the police told him to leave. Although the police also instructed appellant and her companions to leave, they did not comply. Instead, appellant, Moran, Quinn and Haughey began shouting obscenities and insults at the police officers.[4] More than once the police asked the group to leave. Co-defendant Michael Haughey then made an offensive remark to Officer Welsh and punched him in the face. Welsh struck Haughey in response and then attempted to place him under arrest.

While Welsh was trying to control Haughey, co-defendant James Moran also struck Welsh in the face with his fist. Officers Welsh and Stephan attempted to handcuff Haughey while Officers Griffin and Draft struggled to do the same with Moran. First Haughey was placed under arrest and Officer Stephan was able to come to the aid of the officers who were grappling with Moran. Finally, with three officers involved in the effort, Moran was handcuffed. During the effort to subdue Moran and Haughey, appellant and her sister were circling the officers, continuing to hurl verbal abuse at the police. At one point, appellant also ran up to Officer Welsh and punched him "square in the nose". Officer Stephan grabbed appellant and, despite her resistance, arrested and handcuffed her. Appellant and Moran, in particular, continued to struggle and shout obscenities at

4. Appellant and the others were shouting epithets such as "nigger lover", "mother f——ing nigger lover" and several other words in that manner.

the officers during the ride to the police station. When they arrived Moran resisted the officers' attempts to remove him from the police van and place him in a cell.

On appeal, appellant makes several claims of error concerning the conduct of her trial.[5] She contends that: 1) the evidence was insufficient to sustain a conviction for conspiracy; 2) the trial court erroneously instructed the jury on various matters, in particular, on the definition of the defense of justification; 3) the trial court improperly restricted cross-examination of police witnesses regarding an Internal Affairs Investigation of the above-described incident; and 4) after conducting an *in camera* inspection, the trial court erred in refusing to turn over to defense counsel certain statements which the police witnesses had given to the Internal Affairs investigators.

—Criminal Conspiracy—

■ The applicable standard of review for challenges to the sufficiency of evidence is well-settled. We must determine whether, viewing all the evidence at trial, as well as all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth, the jury could have found that each element of the offense was proven beyond a reasonable doubt. Both direct and circumstantial evidence can be considered equally when assessing the sufficiency of the evidence. *Commonwealth v. Hughes*, 521 Pa. 423, 429–31, 555 A.2d 1264, 1267 (1989); *Commonwealth v. Ogin*, 373 Pa.Super. 116, 540 A.2d 549 (1988) (en banc).

■ Appellant contends that the evidence of conspiracy fails to satisfy this standard because the Commonwealth failed to establish a conspiratorial agreement among the parties. It is clear that essential to the crime of conspiracy is a common understanding and agreement that a crime will be committed. *See Commonwealth v. Derr*, 501 Pa. 446, 462 A.2d 208 (1983); *Commonwealth v. Anderson*, 381 Pa.Super. 1, 552 A.2d 1064 (1988). It is equally plain that

**5.** Appellant was tried jointly with Haughey and Moran. Quinn was charged with disorderly conduct only and was not tried with her companions.

direct proof of such an agreement is rarely available, nor is it necessary. Thus, "proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities". *Commonwealth v. Campbell*, 353 Pa.Super. 178, 180–81, 509 A.2d 394, 395 (1986) (quoting *Commonwealth v. Strantz*, 328 Pa. 33, 43, 195 A. 75, 80 (1937)). An agreement can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail. *See Commonwealth v. Lamb*, 309 Pa.Super. 415, 429, 455 A.2d 678, 685–86 (1983).

Appellant argues that the Commonwealth's evidence proved only a spontaneous, impulsive confrontation between appellant, her cohorts and the police, and the evidence therefore was insufficient to show conspiracy. She relies on *Commonwealth v. Kennedy*, 499 Pa. 389, 453 A.2d 927 (1982). However, *Kennedy* is distinguishable. In *Kennedy*, the Supreme Court found insufficient evidence of a conspiracy where the defendant and his alleged co-conspirator assaulted the landlord of the building in which defendant lived. The court found nothing in the relationship of the parties to indicate an implicit or explicit agreement to engage in an assault and found that although the parties acted simultaneously, they nevertheless acted independently.

■ Here, on the other hand, all the co-conspirators acted as a group in concert. Before the police arrived, they acted together to commit an assault on the lone black man. They were told as a group to disperse but instead they decided, as a group, to stay and engage in joint criminal conduct in which each was spurring the others on toward a common criminal purpose. It is unnecessary to prove an explicit and formal agreement between the conspirators. The agreement necessary to support a conspiracy conviction can be

wholly tacit so long as the surrounding circumstances confirm that the parties have decided to act in concert. In this case, the actors' relationships and their conduct before, during and after the criminal episode established a unity of criminal purpose sufficient for the jury to find conspiracy beyond a reasonable doubt.

—Jury Instructions—

Appellant makes three claims with respect to the trial court's instructions to the jury. First she argues that the trial court confused the jury by erroneously omitting which police officer was the "object" of the conspiracy. Next she claims that the trial court erred by failing to give the jury her suggested charge on prior inconsistent statements. Her third complaint with respect to the trial court's charge is that the court incorrectly stated the law on "justification" by erecting a more onerous standard than the Crimes Code dictates. Specifically, she argues that she was entitled to a charge on justification which would have informed the jury that she was justified in using force against a police officer if she reasonably believed he threatened any bodily injury to a third party (in this case James Moran). In its instructions the trial court restricted the justification defense to those instances where *serious bodily injury or death* is threatened.

We may quickly dispose of appellant's first two arguments regarding conspiracy and prior inconsistent statements. It is axiomatic that in evaluating jury instructions we review the charge as a whole, not as isolated excerpts. Reversal is required only if the asserted errors resulted in prejudice to the defendant. *See Commonwealth v. Riggins*, 374 Pa.Super. 243, 253, 542 A.2d 1004, 1009 (1988). In the instant case, the trial court indicated to the jury that only police officer Welsh was the intended victim of appellant's actions. Thus appellant's assertion that the court failed to identify the officer who was the victim of the conspiracy is wholly without merit.

Additionally, the trial court did not err in refusing to instruct the jury on appellant's requested instruction on

prior inconsistent statements. A review of the record reveals that the trial court's instructions adequately and clearly presented the law to the jury. The judge was not required to accept requested instructions. *See Commonwealth v. Cimorose*, 330 Pa.Super. 1, 478 A.2d 1318 (1984).

Lastly, we address appellant's argument that the trial court's instruction on the justification defense was in error. The issue appears to be one of first impression in this Commonwealth. After carefully examining decisions from other jurisdictions and evaluating the underlying policy implications, we conclude that the trial court correctly instructed the jury on the necessary components of a justification defense in the context of resisting arrest.

At trial appellant testified that she struck Officer Welsh in an effort to stop him from injuring her boyfriend, James Moran. She claimed that the police officers were beating Moran about the head and body with nightsticks and that at one point one officer had his foot on Moran's throat, choking him. Because "they wouldn't stop beating him", appellant went to Moran's aid by hitting the police officer. The trial court charged the jury on the law of the defense of justification as follows:

> Now, in this case justification is a defense, if the defendant French reasonably believed that her intervention was necessary to protect Moran from *death or serious bodily injury* and that the force used was immediately necessary to protect Moran against the force used by Officer Welsh on the same occasion as Miss French used force.

> Because the Commonwealth has the burden of disproving the defense of justification, you may find Miss French guilty only if you are satisfied beyond a reasonable doubt either that French did not reasonably believe that her intervention was necessary to protect Moran or that she did not reasonably believe that the force she used was immediately necessary to protect Moran then and there against the force used by Officer Welsh. (Emphasis added).

Appellant argues that the trial court's instruction was incorrect in that it limited her justification defense to those situations wherein the arresting officer's use of excessive force threatens *serious bodily injury or death*. She asserts that a citizen should prevail on a justification claim where the force exerted by the police is excessive only to the extent that *any bodily injury* is threatened.

The general principle that an individual may not use force to resist even an unlawful arrest made by a known police officer is not challenged by the appellant. Rather we are asked to decide whether force under some circumstances is justifiable, and if we conclude that force is justifiable, what are those circumstances.[6]

The defense of justification is covered generally in our Crimes Code in Sections 501 through 510. In particular, section 505 provides:

(a) *Use of force justifiable for the protection of the person.* The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

(b) *Limitations on justifying necessity for use of force.—*

(1) The use of force is not justifiable under this section:

(i) to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful;

18 Pa.Cons.Stat.Ann. § 505(a) and (b)(1)(i) (Purdon 1983).

Section 506 further provides that a person is justified in using force to protect a third person under the same circum-

6. We are aware that the specific factual scenario presented in the instant case does not involve self-defense but rather intervention on behalf of a third party. In general, however, our justification statute places an intervenor in the shoes of the person whom he or she is aiding. 18 Pa.Cons.Stat.Ann. § 506 (Purdon 1983). Therefore, in this case, appellant French would be justified in using whatever force to prevent injury to Moran as Moran could use in self-defense. To simplify our discussion, we eliminate continual references to the third party situation.

stances and to the same extent as he or she would be justified under the rules of self-protection.[7]

Our statutory scheme, which prohibits the use of force in resisting even an illegal arrest by one known to be a law enforcement officer, reflects the modern trend to abrogate the traditional but outdated common law rule. The established rule had been that a person had the right to use force to resist an illegal arrest. Either by statute or by case law, many jurisdictions have moved toward a more enlightened view, i.e., disputes about the legality of an arrest are more properly settled in court than in the potentially explosive atmosphere of the street.[8] Thus, based on statute and sound reasoning, the courts of Pennsylvania have consistently held that "even an unlawful arrest does not excuse an assault upon an arresting police officer". *Commonwealth v. McKeirnan*, 337 Pa.Super. 403, 408, 487 A.2d 7, 10 (1985); *Commonwealth v. Meoli*, 307 Pa.Super. 50, 452 A.2d 1032 (1982); *Commonwealth v. Temple*, 258 Pa.Super. 269, 392 A.2d 788 (1978); *Commonwealth v. Whitner*, 241 Pa.Super. 316, 361 A.2d 414 (1976) (en banc).

In the instant case the Commonwealth urges us to end our inquiry here. However to do so would be to avoid the legitimate and important issue appellant has raised as to whether the use of excessive force by the police officer in effectuating an arrest allows the arrestee to invoke the right of self-defense and, more critical to the disposition of this case, what amount of force by the police is necessary to overcome a citizen's duty to submit peacefully to arrest.

---

**7.** 18 Pa.Cons.Stat.Ann. § 506(a)(1) (Purdon 1983).

**8.** *See, e.g.* Annotation, *Modern Status of Rules as to Ribht to Forcefully Resist Illegal Arrest,* 44 A.L.R.3d 1078 (1972); Chevigny, *The Right to Resist an Unlawful Arrest,* 78 Yale L.J. 1128 (1969); Note, *Justification, Excuse, and Resisting Unlawful Arrest,* 33 Wayne L.Rev. 1471, Summer, 1987.

As one court aptly noted:

"The legality of an arrest may often be a close question as to which even lawyers and judges may disagree. Such a close question is more properly decided by a detached magistrate rather than by the participants in what may well be a highly volatile imbroglio." *Commonwealth v. Moreira,* 388 Mass. 596, 600, 447 N.E.2d 1224, 1227 (1983).

A surface reading of the applicable statutes would suggest that they eliminate altogether the justification defense for those persons using force to resist an arrest by a police officer even if the arrest is unlawful. However, thoughtful analysis compels the conclusion that situations exist where justification may be an appropriate defense. The Official Comment to Title 18, section 505 supports this view and provides: *"Under Subsection (b)(1)(i) the actor may use force if the arresting officer unlawfully uses or threatens deadly force."* 18 Pa.Cons.Stat.Ann. § 505 (Purdon Supp. 1989) (emphasis added). Moreover the Official Comment notes that the justification section in our Crimes Code is derived from section 3.04 of the Model Penal Code of the American Law Institute. Section 3.04 of the Model Penal Code also provides that a justification defense is denied for the use of force in resisting even an unlawful arrest made by a known police officer. In limiting this principle, however, the Model Penal Code Comment notes:

*[I]t has no application when the actor apprehends bodily injury, as when the arresting officer unlawfully employs or threatens deadly force, unless the actor knows that he is in no greater peril than arrest if he submits to the assertion of authority.* The actor thus does not lose his justification if the officer uses more force than is necessary to effect the arrest, or otherwise constitutes a danger to the safety of the citizen.

Model Penal Code § 3.04, Comment at 43 (emphasis added).

Thus it is clear that in enacting section 505(b)(1)(i), which in general deprives a person of authority forcibly to resist an unlawful arrest, the legislature did not intend the section to apply to a situation in which an officer uses excessive force. Additional authority for this conclusion comes from Toll's Annotations to the Pennsylvania Crimes Code in which Toll quotes the above underscored comment from the Model Penal Code with approval in explaining the application of section 505(b)(1)(i).

Furthermore, logic compels the same conclusion. As the Supreme Court of New Jersey cogently articulated:

There is sound reason for a difference in the rights and duties of the citizen in the two situations [an illegal arrest accomplished without excessive force versus one where excessive force is employed].  Despite his duty to submit quietly without physical resistance to an arrest made by an officer acting in the course of his duty, even though the arrest is illegal, his right to freedom from unreasonable seizure and confinement can be protected, restored and vindicated through the legal processes.  However, the rule permitting reasonable resistance to excessive force of the officer, whether the arrest is lawful or unlawful, is designed to protect a person's bodily integrity and health and so permits resort to self-defense.  Simply stated, the law recognizes that liberty can be restored through legal processes but *life or limb cannot be repaired in a courtroom.*  And so it holds that the reason for outlawing resistance to an unlawful arrest and requiring disputes over its legality to be resolved in the courts has no controlling application on the right to resist an officer's excessive force.

*State v. Mulvihill,* 57 N.J. 151, 156–57, 270 A.2d 277, 280 (1970) (citation omitted) (emphasis added).

Relying on this or similar reasoning the majority of jurisdictions justify an arrestee's use of self-defense when an arrest is being effectuated by the use of excessive force.[9]  Often this rule is stated in the negative, that is, that in the absence of excessive force by an arresting officer, a citizen may not use force to resist arrest, whether or not the arrest is illegal under the circumstances.  Unfortunately, while we concur in this general proposition, it does not complete the crucial inquiry here.  We must decide what

**9.** *See* Annotation, *The Right to Resist Excessive Force used in Accomplishing Lawful Arrest,* 77 A.L.R.3d 281 (1977); see also *Commonwealth v. Moreira,* 388 Mass. 596, 447 N.E.2d 1224 (1983); *People v. Bailey,* 108 Ill.App.3d 392, 64 Ill.Dec. 75, 439 N.E.2d 4 (1982); *Ivester v. State,* 398 So.2d 926 (Fla.App. 1 1981); *State v. Gelinas,* 417 A.2d 1381 (R.I.1980); *State v. Mulvihill,* 57 N.J. 151, 270 A.2d 277 (1970); *Gray v. State,* 463 P.2d 897 (Alaska 1970); *People v. Curtis,* 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33 (1969).

degree of force by the police triggers the right forcefully to resort to self-defense.

We hold that an arrestee may resist excessive force by a known police officer only if serious bodily injury or death is threatened or inflicted. We are persuaded of the correctness of this holding for two reasons.

First, we believe that the violent potential of the arrest context dictates that a more limited and stringent application of self-defense principles is demanded. Force is justified only in the face of a threat of serious bodily injury or death. To sanction a lesser standard would encourage unnecessary violence and invite the kind of escalating retaliatory conduct which this case dramatically demonstrates. Arrests often take place on the street or in other crowded, hostile environments. To allow an arrestee or a bystander to intensify the danger by forcefully resisting an overly aggressive arrest when any bodily injury is feared would not serve the interests of peace in society. We stress that our conclusion in no way condones excessively assaultive police conduct.

We find persuasive the language of the Court of Appeals of the State of Washington:

We emphatically do not countenance a use of force by police which exceeds that essential to effect an arrest, but the arrestee's right to freedom from arrest without excessive force that falls short of causing serious injury or death can be protected and vindicated through legal processes, whereas loss of life or serious physical injury cannot be repaired in the courtroom. However, in the vast majority of cases, as illustrated by the one at bar, resistance and intervention make matters worse, not better. They create violence where none would have otherwise existed or encourage further violence, resulting in a situation of arrest by combat. Police today are sometimes required to use lethal weapons for self protection. If there is resistance on behalf of the person lawfully arrested and others go to his aid, the situation can degenerate to the point that what should have been a simple

lawful arrest leads to serious injury or death to the arrestee, the police or innocent bystanders. Orderly and safe law enforcement demands that an arrestee not resist a lawful arrest and a bystander not intervene on his behalf unless the arrestee is actually about to be seriously injured or killed.

*State v. Westlund,* 13 Wash.App. 460, 467, 536 P.2d 20, 25 (1975).[10]

The court in *Westlund* went one step further than this court is prepared to go in limiting the use of self-defense in the arrest context. The Washington courts would countenance resistance by an arrestee only if he was *actually* about to be seriously injured or killed. We conclude that where a person reasonably believes himself to be in genuine danger of death or serious bodily injury, he may defend himself against that injury by the use of reasonable force. We think that this formulation protects the competing interests implicated here. The jury, when accurately instructed, must resolve the factual issues regarding the reasonableness of the arrestee's apprehension of the degree of excessive force allegedly being used against him.

Finally, we rely for support for our holding on the language of the commentary to our Crimes Code and to the Model Penal Code from which it is derived. We believe that this language, i.e., that an actor may invoke the justification defense *"when the actor apprehends bodily injury, as when the arresting officer unlawfully employs or threatens deadly force"* was intended to illustrate the gravity of the situations wherein the defense could legitimately be asserted. We do not agree that *any* bodily injury would rise to the level of the deadly force illustration chosen by the commentators.

■ Here the trial court's instruction was consistent with

10. The *Westlund* holding was adopted and this language cited with approval in an en banc decision of the Washington Supreme Court. *State v. Holeman,* 103 Wash.2d 426, 693 P.2d 89 (1985) (en banc).

the law as we have outlined it.[11]   A third party (here appellant French) is entitled to come forcefully to the aid of a person being placed under arrest by a known police officer only if the officer was employing or threatening excessive force which she reasonably believed subjected the arrestee to serious bodily injury or death.   The trial court so instructed the jury.

## Internal Affairs Division Investigation

Appellant's next two arguments concern the trial court's actions regarding a previously completed Internal Affairs Division (IAD) inquiry into the episode from which these charges arose.   Specifically, appellant argues that the trial court erred in refusing to allow defense counsel to cross-examine police witnesses regarding statements they may have given to the IAD investigators.   Second, appellant argues that the trial court committed reversible error by refusing to turn over the officers' statements made during the IAD investigation to defense counsel.   She claims it was error for the court to rely on its own *in camera* inspection to assess whether the IAD statements were discoverable.

With respect to the first issue, we conclude that the trial court properly exercised discretion in the area of cross-examination.   However, because the court should have permitted the defense to inspect statements in the IAD file, we remand for an evidentiary hearing before the trial court to determine whether the court's failure to permit defense counsel personally to inspect the statements was harmless error.

The statements in question were made during the police department's IAD inquiry which was triggered by a complaint filed by James Moran two days after his arrest. Moran's complaint alleged that he was struck with nightsticks and suffered other physical abuse at the hands of the

11.  In *People v. Kelley,* 3 Cal.App.3d 146, 83 Cal.Rptr. 287 (1969), the court approved an instruction which informed the jury that an "arrestee may stand his ground and defend himself if he has a reasonable basis for believing that serious bodily injury is about to be inflicted upon him".

officers. Pursuant to the investigation the IAD took statements from all participants in the melee. At the conclusion of the investigation, IAD found Moran's complaints to be unsubstantiated and resolved the matter in favor of the accused officers. The IAD inquiry was concluded and closed almost a year before appellant's trial began. At trial appellant's attorney attempted to cross-examine Officer Stephan regarding any statements he may have given to "anyone else" about the incident at issue. The Commonwealth objected and at a sidebar conference the fact of the IAD investigation was presented to the trial court. Rather than rule in a vacuum, the trial court ordered the IAD file turned over to the court for an *in camera* inspection to decide the propriety of using the officers' statements for cross-examination. The following day, having conducted an *in camera* reading of the IAD file, the trial court concluded that no exculpatory material was contained therein nor were any of the officers' statements inconsistent with trial testimony thus far elicited. At this point appellant's counsel informed the court that not only did he want to review the IAD files for possible "Brady" material [12] and inconsistent statements but, in addition, he wanted to use the existence of the IAD inquiry to argue that the officers' trial testimony was somehow biased or embellished "because of the possibility of sanctions from the Police Department". The Commonwealth objected, noting that the investigation was not instigated by the police but by a complaint from Moran and was long ago concluded, thereby negating any possible inference that these officers were "under investigation" and would be motivated to lie. The trial court refused to allow inquiry based on the IAD statements and refused to turn them over to the defense.

▋▋▋ Appellant claims that the trial court's action denied her the constitutionality guaranteed right to confront

---

**12.** The court and counsel were referring to the landmark United States Supreme Court case of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), in which the Court announced for the first time the now established constitutional duty on the part of the prosecution to disclose exculpatory information to the defense.

her witnesses in that it precluded her from arguing that the officers had possible motives to lie during the instant prosecution based upon their interests in the outcome of the IAD investigation. While it is true that potential bias and motivation to fabricate are properly the subject of cross-examination,[13] it is also true that the scope of cross-examination lies within the sound discretion of the court and, absent palpable error, the trial court's decision will not be reversed. *Commonwealth v. Rivers*, 383 Pa.Super. 409, 416, 557 A.2d 5, 9 (1989); *Commonwealth v. Ross*, 345 Pa.Super. 571, 498 A.2d 972 (1985). Here the trial court correctly concluded that the completed IAD investigation which exonerated the officers could not be probative of bias or motive to testify falsely and therefore properly disallowed cross-examination.

A brief comparison of the instant case to those upon which appellant principally relies illustrates why we are unpersuaded by her argument. In *Commonwealth v. Sullivan*, 485 Pa. 392, 402 A.2d 1019 (1979), the Supreme Court granted a new trial on the basis of improperly restricted cross-examination. In *Sullivan* the defendant was tried for assaulting a police officer who was arresting the defendant's son. Through cross-examination, defense counsel in *Sullivan* tried to discredit the police officer's testimony by demonstrating that following the incident at issue, the officer had been suspended from the police force and that the suspension was to continue pending the outcome of defendant's case. The trial court refused to allow the cross-examination and the Supreme Court reversed. The witness' interest in the outcome of the case in *Sullivan* was patent and the Supreme Court held that the defendant had the right to develop this theory through cross-examination.

In *Commonwealth v. Dawson*, 486 Pa. 321, 405 A.2d 1230 (1979), the defendant sought to cross-examine the homicide detective who had taken the defendant's confession after arrest. The defendant in *Dawson* wanted to present to the jury the theory that the detective was moti-

13. *See, e.g., Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

vated to fabricate his confession in order to account for time spent allegedly beating another prisoner. Defendant sought to prove that the detective had been subjected to disciplinary action as a result of the beating. The Supreme Court held that defendant should have been entitled to develop this theory because the detective's reputed misconduct and disciplining could have provided a basis for fabricating the confession.

Surely the instant case is not analogous. Here the IAD investigation was completed more than a year before appellant's trial began. The officers involved were exonerated of wrongdoing and were not subject to disciplinary action of any kind. The IAD inquiry resulted in no past penalty for which the officers might theoretically seek vindication, nor were future sanctions even suggested. Appellant's contention that the officers' testimony "may have been motivated by a desire to avoid internal departmental sanctions, if not civil liability for their conduct"[14] is pure speculation which has no support in the record.

■ Appellant also contends that the trial court erred by refusing to turn the IAD file over to defense counsel so that defense counsel independently could assess the potential impeachment value of the police officers' statements. She asserts that the trial court's failure to disclose the statements to her attorney deprived her of her right to confrontation as secured by the United States and Pennsylvania Constitutions. The gravamen of her argument is that the trial court is not in the role of an advocate, and is therefore incapable of determining the "discoverability" of the requested materials. She asserts that the trial court must disclose such materials to the defense despite the court's informed judgment that the statements are devoid of impeachment value.

We conclude that because the officers were witnesses at the trial, the court's denial of defense access to the police

14. Appellant does not explain nor do we see any possible connection between the IAD investigation and the statements given during the course of it and the officers' potential exposure to civil suit.

witnesses' IAD statements constituted error. It is settled that where the Commonwealth has in its possession pretrial statements of its witnesses which have been reduced to writing and which relate to the witness' testimony at trial, it must, upon request, furnish copies of the statements to defense. *See e.g. Commonwealth v. Brinkley*, 505 Pa. 442, 480 A.2d 980 (1984); *Commonwealth v. Hassine*, 340 Pa. Super. 318, 490 A.2d 438 (1986), *appeal denied* (1986); *Commonwealth v. Kysor*, 334 Pa.Super. 89, 482 A.2d 1095 (1984). This conclusion does not extend to the defense request for wholesale inspection of the entire IAD file. The *Brinkley* line of cases requires disclosure of witnesses' *statements* and we decline to enlarge the rule to create a general rule of access to all of the Commonwealth's files. Our analysis does not end with a finding of error, however. The Commonwealth argues that even if the trial court erred in denying access to the statements at issue, any such denial was harmless beyond a reasonable doubt because the statements were wholly consistent with the trial testimony given by the prosecution witnesses. While we agree with the Commonwealth that the error found here is properly subject to a harmlessness analysis, we find that both the interests of justice and relevant case law require us to allow defense counsel an opportunity to argue the merits of this issue to the trial judge who presided over the case.

Both the United States Supreme Court and the courts of this Commonwealth have long recognized the principle that "an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt". *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986); *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978); *Commonwealth v. McGrogan*, 367 Pa.Super. 394, 532 A.2d 1203, *affirmed*, 523 Pa. 614, 568 A.2d 924 (1990); *see also Commonwealth v. Floyd*, 508 Pa. 393, 498 A.2d 816 (1985); *Commonwealth v. Howard*, 375 Pa.Super. 43, 48–50, 543 A.2d 1169, 1172 (1988), *appeal denied*, 522 Pa. 573, 559

A.2d 35 (1989). This principle reflects a fundamental concept, i.e., "that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436 (citations omitted). If we conclude that the error complained of did not contribute to the verdict, no new trial is required.

Here, however, because defense counsel was never given access to the statements due an erroneous ruling by the trial court, the defense has not had an opportunity to argue to the appellate court the potential impact the excluded statements may have had on the verdict. In the instant case, the IAD statements were sought by defense counsel to ascertain whether the prior statements were inconsistent with trial testimony and might therefore provide a basis upon which to impeach the credibility of the police officers' testimony. Without granting defense access to the witnesses' pre-trial statements, the trial court assessed the disputed file and found the statements to be without impeachment value and of no use to the defense. This conclusion was reached without benefit of an advocate's eye. Given the nature of our adversarial system of justice, this procedure has been condemned. Hence, in *Commonwealth v. Hamm*, 474 Pa. 487, 498–99, 378 A.2d 1219, 1225 (1977) the Supreme Court noted:

> We recognize that the trial court has the ultimate responsibility to determine whether the prior statements may be used in cross-examining the witness or are otherwise admissible. However, like other evidentiary rulings, these determinations are properly made in an adversary context. We do not believe that the trial court can determine the value that the prior statements may have to the defense without hearing defense argument after inspection.

We are guided in our disposition of this case by this court's decision in *Commonwealth v. Meo*, 362 Pa.Super. 328, 524 A.2d 902 (1987). In *Meo* this court had to determine whether the appellant was entitled to a new trial based on the failure of the trial court to disclose to defense counsel a police report prepared by an officer who testified at appellant's trial. There we held that the trial court had indeed erred. In *Meo* the Commonwealth argued that the error was harmless because the report contained only cumulative evidence. While this court acknowledged that the "failure to grant a defense request for police reports may indeed be harmless error", we noted the impossibility of making such a determination on a record which did not contain the disputed report.

Therefore we remanded to the trial court for an evidentiary hearing on the harmlessness issue. *Commonwealth v. Meo*, 362 Pa.Super. at 334–36, 524 A.2d at 905–06. Similarly, although in the instant case this court has the benefit of both the trial testimony and the IAD file, the impact of the trial court's ruling on the jury's verdict can only be fairly assessed once counsel has been given access to the witnesses' statements and has advocated the defense position to the trial judge.[15]

■ We remand to the trial court for an evidentiary hearing on whether the court's failure to allow defense access to the Commonwealth witnesses' statements constituted harmless error. We reiterate that our holding does not extend to wholesale access to the IAD file but only to the pre-trial statements given by witnesses who testified at appellant's trial. The standard by which the trial court must judge the harmlessness of the error here was recently reaffirmed by the Supreme Court in *Commonwealth v.*

**15.** The statements have been forwarded in sealed form to this court and made part of the record. Our inspection of them has led this court to conclude that the trial court's evaluation of the statements was correct, and that his failure to turn them over to defense counsel was harmless error. However, a reviewing court eyes evidence from a neutral stance and not from the perspective of a defense advocate. Therefore, a remand is necessary.

*McGrogan,* 523 Pa. 614, 568 A.2d 924 (1980). An error is harmless where the properly admitted evidence is so overwhelming and where the prejudicial impact of the error is so slight that it can be concluded beyond a reasonable doubt that the error could not have contributed to the jury's verdict. *McGrogan,* 523 Pa. at 625–27, 568 A.2d at 930.

Here, if the trial court determines that the error was harmless, the judgment of sentence is affirmed. If the trial court finds that the error was not harmless, we direct the judgment of sentence to be vacated and appellant granted a new trial.

Case remanded for proceedings consistent with this opinion. Jurisdiction is relinquished.

WIEAND, J., files a concurring and dissenting opinion.

WIEAND, Judge, concurring and dissenting:

The majority holds that a citizen may use force to defend himself/herself or another against police brutality only if the use of excessive force by the police threatens death or serious bodily injury. In the meantime, i.e., until the excessive force approaches a level which threatens death or serious bodily injury, the citizen must suffer a police beating without resistance. I dissent. Such a result is not consistent with the provisions of the Crimes Code and, in my judgment, establishes an unfortunate precedent.

Appellant contended at trial that the police had been the aggressors and had used excessive force in confronting the group of which she was a part. She argued that her striking of Officer Welsh had been justified because she acted to protect Moran, her boyfriend, from injury because of the beating being inflicted upon him by the police. Her evidence was that the group of which she had been a part had been attacked by several black youths, all but one of whom had fled when the police arrived. Thereafter, she contended, the police had beaten Moran and Haughey. Moran, appellant said, had been struck repeatedly by police nightsticks about the head, shoulders and ribs, and when

she intervened he was turning colors because a policeman had placed a foot on his throat. Appellant testified further that Moran's lip had been bleeding, his eye had become swollen and he had sustained cracked ribs. In response to appellant's evidence, the trial court instructed the jury regarding the defense of justification in the following manner:

Now, in this case *justification is a defense, if the defendant French reasonably believed that her intervention was necessary to protect Moran from death or serious bodily injury* and that the force used was immediately necessary to protect Moran against the force used by Officer Welsh on the same occasion as Miss French used force.

Because the Commonwealth has the burden of disproving the defense of justification, you may find Miss French guilty only if you are satisfied beyond a reasonable doubt either that French did not reasonably believe that her intervention was necessary to protect Moran or that she did not reasonably believe that the force she used was immediately necessary to protect Moran then and there against the force used by Officer Welsh. (emphasis added)

The issue of first impression raised by appellant on appeal is whether the trial court, by its instruction, improperly limited the defense of justification to cases in which intervention is necessary to protect the actor or another person from death or serious bodily injury because of police use of excessive force. After careful review of the Crimes Code and judicial decisions in other states, I would hold that the trial court erroneously interpreted the Crimes Code and improperly limited the right of a citizen to protect himself/herself or another against the use of excessive force by the police.

The use of force in protecting other persons is governed by 18 Pa.C.S. § 506, which provides generally that a person is justified in using force to protect another person under the same circumstances and to the same extent that he or

she would be justified in using force to protect himself or herself. Pursuant to 18 Pa.C.S. § 505, a person is justified in using force to protect himself or herself "when the actor believes that such force is immediately necessary for the purpose of protecting himself [or herself] against the use of unlawful force by such other person on the present occasion." 18 Pa.C.S. § 505(a). However, the use of force is not justifiable "to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful...." 18 Pa.C.S. § 505(b)(1)(i).

Subsection 505(b)(1)(i) of the Pennsylvania Crimes Code is identical to the language of Section 3.04(2)(a)(i) of the Model Penal Code. The comment to the Model Penal Code distinguishes between the use of force to resist an illegal arrest and the use of force to resist excessive force by the police in making any arrest. The Comment is as follows:

> It should of course be noted, however, that *the limitation forbids the use of force for the sole purpose of preventing an arrest; it has no application when the actor apprehends bodily injury,* as when the arresting officer unlawfully employs or threatens deadly force, unless the actor knows that he is in no greater peril than arrest if he submits to the assertion of authority. *The actor thus does not lose his justification if the officer uses more force than is necessary to effect the arrest, or otherwise constitutes a danger to the safety of the citizen.*

Model Penal Code § 3.04, Comment at p. 43 (emphasis added). It follows that while the defense of self-defense is not available to one who resists an arrest which is made unlawfully but without excessive force, it is available to one who is subjected to police use of excessive force in making an arrest, even where the arrest is otherwise lawful. When a citizen is subjected to excessive force at the hands of the police, he or she may use that degree of force which is reasonably necessary to protect himself or herself from bodily injury.

"Bodily injury" is defined by the Crimes Code as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301. "Serious bodily injury" is limited to "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. The majority holds that a citizen may use reasonable force to protect himself or herself only where police use of excessive force threatens serious bodily injury. I would hold that reasonable force may also be used to protect a citizen from excessive police force which threatens bodily injury. The police do not have a right, in making an arrest, to inflict bodily injury by using excessive force.

Toll, in his invaluable work on the Pennsylvania Crimes Code, has observed that 18 Pa.C.S. § 505(b)(1)(i) "has no application when [the person being arrested] *apprehends bodily injury*, as when the arresting officer unlawfully employs or threatens deadly force, unless the actor knows that he is in no peril greater than arrest if he submits to the assertion of authority." Toll, Pennsylvania Crimes Code Annotated § 505(b)(1)(i) at p. 166 (emphasis added). Toll's reference to "deadly force" is illustrative and not restrictive of the exception which pertains to the right to resist an arresting officer's improper use of excessive force which threatens injury to the person being arrested.

In a majority of jurisdictions, which, like Pennsylvania, prohibit the use of force to resist an illegal arrest,[1] the defense of justification is available to persons who have used reasonable force to protect themselves or others against the use of excessive force by the police. Thus in *State v. Mulvihill*, 57 N.J. 151, 270 A.2d 277, 44 A.L.R.3d 1071 (1970), the Supreme Court of New Jersey held that

1. At common law a privilege existed to use force to resist an illegal arrest. See: 5 Am.Jur.2d, Arrest, § 94; Annot. Modern Status of Rules as to Right to Forcefully Resist Illegal Arrest, 44 A.L.R.3d 1078 (1972). The modern trend, however, is to prohibit the use of force to resist arrests which are technically unlawful. See: *Commonwealth v. Moreira*, 388 Mass. 596, 447 N.E.2d 1224 (1983); Wharton's Criminal Law, Vol. 4, § 593 (14th ed. 1981).

although a person does not have a privilege to resist an arrest made by one he knows to be an authorized police officer, an arrested person may use reasonable force to protect himself from the use of excessive and unnecessary force by the arresting officer. The New Jersey Court observed that "the rule permitting reasonable resistance to excessive force [by] the officer, whether the arrest is lawful or unlawful, is designed to protect a person's bodily integrity and health and so permits resort to self-defense. Simply stated, the law recognizes that liberty can be restored through legal processes but life or limb cannot be repaired in a courtroom. And so it holds that the reason for outlawing resistance to an unlawful arrest and requiring disputes over its legality to be resolved in the courts has no controlling application on the right to resist an officer's excessive force." *Id.* at 156–58, 270 A.2d at 280, 44 A.L.R.3d at 1075.

The law in New York is also that "a citizen may use reasonable force in self-defense where the force exerted by the police in effecting an arrest is excessive." *People v. Stevenson,* 31 N.Y.2d 108, 112, 335 N.Y.S.2d 52, 56, 286 N.E.2d 445, 448 (1972). And in *Commonwealth v. Moreira,* 388 Mass. 596, 600–01, 447 N.E.2d 1224, 1227 (1983), the Supreme Judicial Court of Massachusetts held that *"in the absence of excessive or unnecessary force by an arresting officer,* a person may not use force to resist an arrest by one who he knows or has good reason to believe is an authorized police officer, engaged in the performance of his duties, regardless of whether the arrest was unlawful in the circumstances." (emphasis added). See also: *Gray v. State,* 463 P.2d 897 (Alaska 1970); *People v. Curtis,* 70 Cal.2d 347, 74 Cal.Rptr. 713, 450 P.2d 33 (1969); *People v. Hess,* 687 P.2d 443 (Colo.1984); *State v. Holley,* 480 So.2d 94 (Fla.1985); *People v. Bailey,* 108 Ill.App.3d 392, 64 Ill.Dec. 75, 439 N.E.2d 4 (1982); *State v. Franz,* 9 Kan. App.2d 319, 676 P.2d 157 (1984); *State v. Nunes,* 546 S.W.2d 759 (Mo.App.1977); *City of Columbus v. Fraley,* 41 Ohio St.2d 173, 324 N.E.2d 735 (1975), *cert. denied,* 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975); *State v. Crane,* 46

Or.App. 547, 612 P.2d 735 (1980); *State v. Gelinas*, 417 A.2d 1381 (R.I.1980); *State v. Peters*, 141 Vt. 341, 450 A.2d 332 (1982); *State v. Reinwand*, 147 Wis.2d 192, 433 N.W.2d 27 (1988); *Best v. State*, 736 P.2d 739 (Wyo.1987). Contra: *State v. Westlund*, 13 Wash.App. 460, 536 P.2d 20 (1975). See: Annot., Right to Resist Excessive Force Used in Accomplishing Lawful Arrest, 77 A.L.R.3d 281 (1977).

It may be that appellant and her co-defendants were the aggressors in their skirmish with the police and that their use of force was not necessary to defend themselves against the force, if any, exercised by the police. Because she asserted in defense that the use of force was necessary to protect against excessive force used by the police, however, appellant was entitled to have the jury correctly instructed. I would hold that the jury was not correctly instructed. I am unable to join the majority which, under the shibboleth of serving "the interests of peace in society," has fashioned a rule which unnecessarily limits principles of self-defense defined by the legislature in the Crimes Code and which, because of its precedential effect, may work a manifest injustice in future cases. Thus, if excessive force were used by police to arrest a citizen who mistakenly was identified as a wanted felon, the citizen, under the rule adopted by the majority, would be required to endure a beating without defending himself or herself unless or until he or she were threatened with death or "serious, permanent disfigurement, or protracted loss or impairment of the function of [a] bodily member or organ." Moreover, if the citizen surrendered to the natural tendency to defend himself or herself against excessive police force rather than passively accepting a beating, he or she would be deprived of the defense of self-defense if it were subsequently determined that excessive police force threatened only bodily injury and not serious bodily injury. A rule which permits such a result, in my judgment, is dangerous and not at all what the legislature intended when it adopted sections 505 and 506 of the Crimes Code.

The application of normal principles of self-defense to situations where police use excessive force will not, as the majority suggests, "encourage unnecessary violence" or "invite ... escalating retaliatory conduct." The statute defining the justification defense has included limitations which will prevent the use of force and violence by persons who are arrested by the police. Before a citizen is justified in using even slight force against a police officer, the citizen must have a reasonable belief that such force is immediately necessary to protect himself/herself or another against bodily injury inflicted as a result of excessive force used by the police. The degree of force permitted in self-defense, moreover, would be only that force reasonably necessary to protect against bodily injury. I am confident that the law of self-defense as defined by the legislature will be adequate to preserve the public peace and protect police officers against citizen violence in the performance of their duties. It will also serve to protect citizens against the use of excessive force by the police.

After careful review of the history of the Pennsylvania Crimes Code and the decisions interpreting similar statutory language by the courts of sister states, I am persuaded that the trial court's instruction on self-defense was erroneous. Appellant was entitled to receive an instruction that her use of force was justified if she believed that such force was immediately necessary to protect her companion against an arresting officer's use of excessive force which was likely to cause bodily injury to such other person. I would hold that excessive force by an arresting officer may justifiably be resisted if such excessive force is likely to cause any impairment of another's physical condition or substantial pain. The use of force to protect against an officer who unlawfully uses excessive force to make an arrest should not be limited to those situations in which the excessive force is likely to cause death or serious bodily injury.

I agree with the majority's determination that the trial court erred when it refused defense counsel the right to examine statements made by police officers during an inves-

tigation of the incident by the Internal Affairs Division. Examination of these statements had been requested by defense counsel to assist in cross-examining the several police officers who testified against appellant at trial. The court requested that the statements be produced, made an in-camera examination of the statements, concluded that they contained no exculpatory information, and denied appellant's request that her counsel be allowed to examine them. Appellant argues on appeal that the officers' statements should have been examined through the eyes of an advocate and that the trial court erroneously denied her counsel access to the same.

In *Commonwealth v. Contakos*, 492 Pa. 465, 472, 424 A.2d 1284, 1288 (1981), the Pennsylvania Supreme Court stated that "a defendant is entitled to review any notes, reports or written records relating to interviews with witnesses who subsequently testify at trial." The reasons for allowing defense access to prior statements of Commonwealth witnesses were explained in *Commonwealth v. Hamm*, 474 Pa. 487, 378 A.2d 1219 (1977), where the Court said:

> [I]n Pennsylvania, a defendant is entitled, upon request at trial, to examine prior statements of Commonwealth witnesses which the Commonwealth has in its possession. *Commonwealth v. Grayson*, 466 Pa. 427, 353 A.2d 428 (1976); *Commonwealth v. Johnson*, 457 Pa. 554, 327 A.2d 632 (1974) (dictum); *Commonwealth v. Morris*, 444 Pa. 364, 281 A.2d 851 (1971); *Commonwealth v. Kontos*, *supra*. Examination of these statements provides the defense "a fair opportunity to cross-examine the witnesses." *Commonwealth v. Grayson*, 466 Pa. at 429, 353 A.2d at 429; accord, *Jencks v. United States*, 353 U.S. 657, 667, 77 S.Ct. 1007, 1012–13, 1 L.Ed.2d 1103, 1111 (1957).
>
> . . . .
>
> We conclude that in camera review of the prior statements of Commonwealth witnesses by the trial court does not adequately protect the interests served by permitting

the defense access to prior statements of Commonwealth witnesses.

. . . .

We believe that defense counsel can better evaluate whether the prior statements relate to the subject matter of a witness' direct testimony. Statements which on their face do not appear to bear upon the direct testimony may actually be relevant once defense counsel brings to the court's attention other information counsel has developed through his investigation and preparation of the defense. We recognize that the trial court has the ultimate responsibility to determine whether the prior statements may be used in cross-examining the witness or are otherwise admissible. However, like other evidentiary rulings, these determinations are properly made in an adversary context. We do not believe that the trial court can determine the value that prior statements may have to the defense without hearing defense argument after inspection. See *Jencks v. United States*, 353 U.S. at 669 & n. 14, 77 S.Ct. at 1013–14 & n. 14.

. . . .

We hold that upon request at trial, the defense is entitled to examine in their entirety the prior statements of Commonwealth witnesses which the Commonwealth has in its possession. We recognize that there may be situations in which defense access to prior statements should be restricted by the trial court, but the availability of protective orders should be adequate in such situations. Upon a showing of good cause by the Commonwealth, the trial court may issue a protective order limiting the defense right to examine the statements of Commonwealth witnesses. See generally *Commonwealth v. Kontos*, 442 Pa. at 350 n. 6, 276 A.2d at 833 n. 6; *Lewis v. Court of Common Pleas, [436 Pa. 296, 260 A.2d 184] supra;* (1969) ABA Standards §§ 2.5(b), 2.6, 4.4.

*Id.,* 474 Pa. at 496–501, 378 A.2d at 1223–1226 (footnotes omitted). More recently the Court reaffirmed this reasoning in *Commonwealth v. Lloyd,* 523 Pa. 427, 567 A.2d 1357

(1989). See also: *Commonwealth v. Gartner,* 475 Pa. 512, 381 A.2d 114 (1977); *Commonwealth v. Grayson,* 466 Pa. 427, 353 A.2d 428 (1976); *Commonwealth v. Kontos,* 442 Pa. 343, 276 A.2d 830 (1971); *Commonwealth v. Meo,* 362 Pa.Super. 328, 524 A.2d 902 (1987).

A case factually similar to the instant case was before the Supreme Court in *Commonwealth v. Smith,* 417 Pa. 321, 208 A.2d 219 (1965). There the defendant had been stopped by a police officer for a traffic violation, and a fight between the officer and the defendant had ensued. At trial the defendant contended that the officer had been the aggressor and that he, the defendant, had acted only in self-defense. The officer refuted this testimony, stating that defendant had struck the first blow. The officer's testimony was corroborated in part by the testimony of two eyewitnesses who testified that defendant had appeared to be the aggressor. During trial, the defendant requested a subpoena to compel production of statements previously made by the witnesses to F.B.I. personnel who had investigated defendant's complaint that the police had violated his civil rights. The trial court refused to issue the subpoena. On appeal following conviction, the Supreme Court held that the defendant should have been provided access to the witnesses' statements and ordered a new trial. The lead opinion, authored by Justice Musmanno and joined by one other justice, concluded that this result was compelled by the compulsory process clause of the United States Constitution. In a concurring opinion, three justices concluded, on non-constitutional grounds, that the interests of justice required disclosure of the witnesses' prior statements.

Recently, in *Commonwealth v. Lloyd, supra,* the Supreme Court cited *Smith* with approval. In *Lloyd,* the defendant had been charged with raping and sexually abusing a six year old child. At trial he sought access to records of the victim's psychotherapeutic treatment in order to substantiate a defense claim that the victim had been hallucinatory or delusional. After viewing the records in camera, the trial court determined that defendant's claims

were unfounded and denied access to the records. The Supreme Court reversed. In holding that the defense should have been given access to the records, the Supreme Court said:

> We now hold under the confrontation clause of the Pennsylvania Constitution, that the appellant in the instant action was denied his right to confrontation when his attorney was denied access to the contents of the victim's psychotheraputic [sic] records. In addition we hold that the right to inspect these records is also mandated by the compulsory process clause of the Pennsylvania Constitution. Our reasoning in this regard is guided by this Court's decision in *Commonwealth v. Smith*, 417 Pa. 321, 208 A.2d 219 (1965). In Smith the issue was whether the defendant had the right to inspect certain witness statements in the possession of the Federal Bureau of Investigation. While discussing the appellant's right to access this information, Justice Musmanno writing for the majority stated, "Smith had the right to, and great need for, the statements he requested. The 6th Amendment to the Constitution of the United States guarantees to the accused the right to have compulsory process for obtaining witnesses in his favor and to have the assistance of Counsel for his defense." *Smith*, Pa. at 329, 208 A.2d at 223. Though the issue in *Smith* was resolved under the United States Constitution, it is clear that the Court intended to afford similar protection under the Pennsylvania Constitution when it said, "Of course, Article 1, section 9 of the Pennsylvania Constitution is equally applicable." *Smith*, 417 Pa. at 329 N. 2, 208 A.2d at 223 N. 1a.

*Commonwealth v. Lloyd, supra*, 523 Pa. at 432–33, 567 A.2d at 1359.

It seems abundantly clear, therefore, that defense counsel was entitled to examine prior statements made by the arresting police officers during the investigation of the incident by the Internal Affairs Division. When the trial court refused to grant access to these prior statements by

Commonwealth witnesses, it fell into error. This error was not remedied by the trial court's examination of the statements or by its failure to find exculpatory material therein. Appellant was entitled to have them examined through the eyes of an advocate. I would grant a new trial to correct this error. See: *Commonwealth v. Lloyd, supra; Commonwealth v. Smith, supra.*

Appellant also contends that the trial court erred when it refused to permit cross-examination of the arresting officers regarding the investigation made by Internal Affairs. The trial court's ruling, she contends, was a denial of her right to confront the Commonwealth's witnesses with possible motives for lying about the incident.

The right of confrontation includes the right to cross-examine witnesses about possible motives for testifying falsely. *Commonwealth v. Dawson*, 486 Pa. 321, 323–324, 405 A.2d 1230, 1231 (1979). This includes the right to show that a witness has an interest, direct or collateral, in the result of the trial. *Commonwealth v. Evans*, 511 Pa. 214, 225–226, 512 A.2d 626, 632 (1986); *Commonwealth v. Cheatham*, 429 Pa. 198, 202–203, 239 A.2d 293, 296 (1968); *Commonwealth v. Shands*, 338 Pa.Super. 296, 302–303, 487 A.2d 973, 976–977 (1985). See also: *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). The scope and limits of cross-examination, however, are within the discretion of the trial court, whose rulings thereon will not be reversed absent an error of law or abuse of discretion. *Commonwealth v. Rivers*, 383 Pa.Super. 409, 416, 557 A.2d 5, 9 (1989); *Commonwealth v. Ross*, 345 Pa.Super. 571, 574, 498 A.2d 972, 973 (1985). See also: *Commonwealth v. Lane*, 492 Pa. 544, 424 A.2d 1325 (1981); *Commonwealth v. Cheatham, supra.*

In *Commonwealth v. Sullivan*, 485 Pa. 392, 402 A.2d 1019 (1979), the defendant was charged with hindering apprehension and simple assault arising out of a confrontation with a police officer who was attempting to arrest his son. Following the confrontation, the officer was suspended pending the determination of criminal charges against

the defendant. At trial, defendant sought to cross-examine the officer regarding his suspension, but the trial court sustained an objection thereto. The Supreme Court held that the trial court had erred, reasoning as follows:

> In making this ruling, the trial court denied appellant his right of confrontation which includes the right to cross-examine witnesses about possible motives to testify. *Commonwealth v. Dawson* [486 Pa. 321, 405 A.2d 1230 (1979);] *Commonwealth v. Cheatham*, 429 Pa. 198, 239 A.2d 293 (1968). Appellant was entitled to question the police officer to illustrate whether he had an interest in the outcome of the case. This interest may have given the witness a motive in testifying and appellant had a right to explore this.

*Commonwealth v. Sullivan, supra* 485 Pa. at 394, 402 A.2d at 1020.

A similar result was reached in *Commonwealth v. Dawson, supra,* where a homicide detective testified that the defendant had confessed. The defendant maintained that the detective had fabricated the confession to provide an alibi for himself during the period of time in which the detective had allegedly beaten a co-defendant. The defendant was not permitted to cross-examine the detective regarding the alleged beating of the co-defendant or about the detective's subsequent transfer from the homicide division, which the defendant contended was the result of disciplinary action against the detective. The Supreme Court held the trial court's ruling was erroneous and a denial of the defendant's constitutional right to cross-examine witnesses appearing against him. The Court reasoned:

> In the instant case, [the detective's] alleged misconduct and disciplining could have motivated him to fabricate the confession or otherwise give false testimony. Evidence thereon would have been relevant to his motivation and credibility. It was improper not to allow appellant's proposed cross-examination.

*Id.* 486 Pa. at 324, 405 A.2d at 1231. See also: *Commonwealth v. Shands, supra* (defendant had right to cross-ex-

amine arresting police officers regarding ongoing state and federal investigation into their conduct in similar cases, especially where prosecutor doubted the veracity of the officers in prior prosecutions).

Thus, the law is clear that a criminal defendant must be permitted to cross-examine police witnesses against him regarding investigations pending with respect to possible misconduct by the officers or disciplinary actions taken against them as a result of the incident which is the subject of the charges against the defendant. Such matters may demonstrate bias or prejudice which a jury may consider in determining the weight to be given to the witness's testimony.

In the instant case, however, the Internal Affairs investigation had been completed prior to the trial of the charges against appellant, and the charges of police misconduct had been found to be unsubstantiated. The arresting officers, therefore, had been cleared and were not subject to future sanctions. Thus, the completed Internal Affairs investigation was no longer relevant to demonstrate that the police officers had an interest in the outcome of the criminal charges against appellant.

Not only was appellant allowed to cross-examine the police witnesses fully about their handling of the incident resulting in her arrest, but Moran also testified about the complaint which he had filed with the Internal Affairs Division. The exclusion of further cross-examination regarding the investigation, under the circumstances, was neither erroneous nor an abuse of discretion. It did not deprive appellant of the right to cross-examine witnesses against her. As I have previously observed, however, it was error for the court to prevent appellant from examining prior statements made by the police witnesses regarding the incident. Such statements are not privileged. Cross-examination with respect to prior inconsistent statements made by a witness, if any, is invariably proper cross-examination.

With respect to appellant's remaining issues, I am essentially in agreement with the majority. Appellant contends that the Commonwealth failed to prove beyond a reasonable doubt the existence of an agreement between her and her companions to commit the crimes of aggravated assault and resisting arrest. She argues, rather, that the evidence, even when viewed in the light most favorable to the Commonwealth, demonstrated no more than "an unplanned, impromptu fracas on the street among appellant's friends and some police officers, and appellant's unsolicited attempts to intervene during the struggle."

The crime of conspiracy is defined by statute as follows:

§ 903. **Criminal conspiracy**

(a) **Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903(a). "The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished." *Commonwealth v. Keefer*, 338 Pa.Super. 184, 190, 487 A.2d 915, 918 (1985). See also: *Commonwealth v. Plusquellic*, 303 Pa.Super. 1, 449 A.2d 47 (1982); *Commonwealth v. Anderson*, 265 Pa.Super. 494, 402 A.2d 546 (1979). "Shared criminal intent is a sine qua non of the crime of conspiracy." *Commonwealth v. Snyder*, 335 Pa.Super. 19, 34, 483 A.2d 933, 941 (1984). See also: *Commonwealth v. Schomaker*, 501 Pa. 404, 461 A.2d 1220 (1983); *Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972). "Although a person participates in a criminal activity which is the object of the conspiracy, his actions will not support a conviction

for conspiracy without proof of an agreement and participation pursuant to that agreement." *Commonwealth v. Derr,* 501 Pa. 446, 450, 462 A.2d 208, 210 (1983). See also: *Commonwealth v. Yobbagy,* 410 Pa. 172, 188 A.2d 750 (1963); *Commonwealth v. Holman,* 237 Pa.Super. 291, 352 A.2d 159 (1975).

> [I]n order to convict a defendant of conspiracy, a factfinder must conclude that he reached an agreement with his co-conspirator to commit the crime. *Commonwealth v. Graves,* 316 Pa.Super. 484, 463 A.2d 467 (1983). Direct proof of the corrupt agreement, however, is not necessary. *Commonwealth v. Brown,* 351 Pa.Super. 119, 505 A.2d 295 (1986). "An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." *Commonwealth v. Campbell,* 353 Pa.Super. 178, 509 A.2d 394 (1986) *quoting Commonwealth v. Strantz,* 328 Pa. 33, 43, 195 A. 75, 80 (1937). Thus, the existence of a common agreement between co-conspirators may be inferred from circumstantial evidence surrounding the allegedly conspiratorial activities, and from the relationship between and the conduct of the parties. *Commonwealth v. Gordon,* 329 Pa.Super. 42, 477 A.2d 1342 (1984).

*Commonwealth v. Anderson,* 381 Pa.Super. 1, 15–16, 552 A.2d 1064, 1071 (1988). See also: *Commonwealth v. Kennedy,* 499 Pa. 389, 453 A.2d 927 (1982); *Commonwealth v. Carter,* 329 Pa.Super. 490, 478 A.2d 1286 (1984); *Commonwealth v. Davenport,* 307 Pa.Super. 102, 452 A.2d 1058 (1982).

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evi-

dence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred. *Commonwealth v. Carter*, 272 Pa.Super. 411, 416 A.2d 523 (1979).

*Commonwealth v. Lamb*, 309 Pa.Super. 415, 429, 455 A.2d 678, 685–686 (1983). See also: *Commonwealth v. Cooke*, 342 Pa.Super. 58, 492 A.2d 63 (1985); *Commonwealth v. Olds*, 322 Pa.Super. 442, 469 A.2d 1072 (1983); *Commonwealth v. Anderson*, 265 Pa.Super. 494, 402 A.2d 546 (1979).

Appellant relies upon a decision by the Supreme Court in *Commonwealth v. Kennedy, supra.* In that case, following an argument, the defendant and a companion beat the defendant's landlord, causing his death. The Supreme Court reversed a conviction for conspiracy, concluding that there had been insufficient evidence to establish a conspiracy. The Court reasoned that

[m]ore than mere association of participants in crime must be shown. *Commonwealth v. Eiland*, 450 Pa. at 570, 301 A.2d at 652; *Commonwealth v. Roux*, 465 Pa. 482, 488, 350 A.2d 867, 870 (1976). Thus, persons do not commit the offense of conspiracy when they join into an affray spontaneously, rather than pursuant [to] a common plan, agreement, or understanding. *Id.; Commonwealth v. Wilson*, 449 Pa. 235, 296 A.2d 719 (1972).

*Id.*, 499 Pa. at 395–396, 453 A.2d at 930. Thus, the Court held, the mere escalation of an argument into a beating which caused the death of the victim did not, without evidence of an agreement to commit an assault, establish the common understanding or agreement necessary to a criminal conspiracy. Cf. *Commonwealth v. Wilson, supra* 449 Pa. at 239, 296 A.2d at 721 ("[W]here a third party decides on his own initiative to become a participant in an affray between two others and without any request or encouragement, he alters radically the nature and course of the encounter, there can be no nexus of common intent to fasten vicarious criminal liability for the third party's acts on the initial participants.").

Although *Kennedy* is undoubtedly good law, there are in the instant case additional facts which require careful analysis. Here, appellant and her companions were already engaged in a concerted effort to beat a young, black male when police arrived. After police intervened and told the group to disperse, appellant and her companions jointly hurled epithets at and verbally abused the police. While Haughey and Moran were engaged in fisticuffs with the police and resisted police efforts to subdue them, appellant continued to shout obscenities at the police. After Haughey and Moran had been placed under arrest and handcuffed, appellant walked up to Officer Welsh and struck him before she, too, was placed under arrest. And while she and her companions were being transported to the police station, they continued to shout obscenities. This evidence showed a continuous series of acts committed in concert by appellant and her companions. The conduct by appellant, a jury could find, was more than a mere spontaneous entry into an affray.

An agreement to engage in illegal activity may be tacit; it requires no extended period of time but can be formed almost instantaneously. Here, a jury could find that the foursome, which included appellant, acted in concert to bring about the confrontation with the police and appellant, by design, went to the aid of her co-conspirators when their activity resulted in their being placed under arrest. Therefore, I agree with the majority's conclusion that the evidence was sufficient to permit a jury to find that appellant was part of a criminal confederation.

The information charging appellant with conspiracy identified no specific victim and alleged generally that appellant had been part of a conspiracy to engage in resisting arrest and assaulting police. In view of the general nature of the averments of the information, it was not error for the trial court to fail to charge that the conspiracy had to be directed specifically toward an assault on Officer John Welsh and resistance to an arrest which he had attempted to make.

The trial court also did not err when it refused appellant's requested point for charge regarding the use of prior inconsistent statements in assessing witness credibility. "As a general rule, '[t]he refusal to give a proper instruction requested by a party is ground for a new trial only if the substance thereof has not otherwise been covered by the trial court's general charge.' " *Commonwealth v. LaMassa*, 367 Pa.Super. 54, 58, 532 A.2d 450, 452 (1987), quoting *Werner v. Quality Service Oil Co., Inc.*, 337 Pa.Super. 264, 269, 486 A.2d 1009, 1011 (1984). Here, the trial court adequately instructed the jury regarding the credibility of witnesses. Moreover, the court told the jury, inter alia, that in determining credibility it should consider whether a witness had contradicted himself or had been contradicted by other witnesses.[2]

By way of summary, I would affirm the trial court's refusal to arrest judgment. However, I would reverse and remand for a new trial because the trial court incorrectly instructed the jury on the applicability of the justification defense after appellant had testified that she acted to defend her companion. I would also grant a new trial because the trial court erred when it denied access by defense counsel to statements made by police witnesses during an Internal Affairs investigation. I find no merit in appellant's remaining assignments of error.

**2.** Appellant also complains that the trial court incorrectly defined for the jury the crimes of conspiracy and aggravated assault. These issues, however, were waived. When the charge to the jury came to an end, the trial court asked if counsel wished any changes or adjustments. Appellant's counsel, when given an opportunity to do so, did not object to or seek a correction of the court's definitions of conspiracy and aggravated assault. If specific objections had been made, the trial court would have had an opportunity to correct any error which may have crept into its jury instructions. In the absence of a timely objection, the alleged definitional errors in the charge were waived. See: *Commonwealth v. Galloway*, 495 Pa. 535, 538, 434 A.2d 1220, 1221 (1981); *Commonwealth v. Brown*, 490 Pa. 560, 570, 417 A.2d 181, 187 (1980); *Commonwealth v. Martinez*, 475 Pa. 331, 337–338, 380 A.2d 747, 750–751 (1977); *Commonwealth v. Larkins*, 340 Pa.Super. 56, 66–67, 489 A.2d 837, 842–843 (1985); *Commonwealth v. Rineer*, 310 Pa.Super. 241, 246–249, 456 A.2d 591, 593–595 (1983). See also: Pa.R.Crim.P. 1119(b).