COMMONWEALTH of Pennsylvania

v.

**Mario Lamar HATCHIN, a/k/a Mario Wall Hatchin, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 13, 1998.
Filed March 16, 1998.

---

Kirk J. Henderson, Pittsburgh, for appellant.

Sandra Preuhs, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

Before TAMILIA, JOHNSON and BROSKY, JJ.

TAMILIA, Judge:

Appellant, Mario Lamar Hatchin a/k/a Mario Wall, challenges the judgment of sentence of eight (8) to thirty (30) years' imprisonment entered on July 31, 1996, after a jury convicted appellant of criminal homicide,[1] criminal attempt (homicide),[2] criminal conspiracy[3] and aggravated assault.[4] Appellant claims the trial court lacked subject matter jurisdiction over him because the charges of criminal attempt (homicide), criminal conspiracy and aggravated assault were not specified in the criminal information which was filed. Appellant also contends the evidence was insufficient to support his conviction for criminal conspiracy or his liability as an accomplice.

The trial court summarized the facts of this case as follows.

On August 22, 1995, at approximately 11:30 P.M., police were called to a shooting in the West End of Pittsburgh where they found two victims, each of whom were suffering from wounds inflicted by a shot gun. The victim, Elizabeth Turner, was

---

1. 18 Pa.C.S. § 2501(a).

2. *Id.,* § 901(a).

3. *Id.,* § 903(a)(1).

4. *Id.,* § 2702(a)(1).

shot in the chest and eventually died from her wounds while the second victim, Irene Kirk, had her left arm partially shot off and subsequently had to have the arm amputated.

Ms. Kirk testified at trial that on the night of the shooting, the [appellant] arrived at Ms. Turner's apartment with another individual, co-defendant Raphael Gary, to retrieve the guns which the co-defendant had stored in Ms. Turner's closet. According to the witness, the co-defendant had an arrangement with Ms. Turner whereby he stored his guns in her apartment for either drugs or money. On this particular day, Ms. Turner and Ms. Kirk had taken one of the guns and had sold it for crack cocaine. At a time later in the same day, Ms. Turner apparently took another gun from the closet and left the apartment. She returned with more crack cocaine for herself and Ms. Kirk.

Late that evening, the co-defendant, carrying a shot gun and accompanied by the [appellant], returned to the apartment to get his guns. They both went to the closet and looked inside. When the guns were not found, the co-defendant demanded that either victim tell him what had happened to the guns. Both women denied knowing anything about the guns and steadfastly refused to tell the co-defendant where either gun was.

While pointing the shot gun at Ms. Turner who was sitting on a mattress on the floor, the co-defendant ordered the [appellant] to close the window. The [appellant] was unable to get the window closed, however, and he was then ordered to lock the door. After locking the door, the [appellant] returned to stand beside the co-defendant who continued to point the gun at Ms. Turner. When Ms. Turner refused to say where the guns were, the co-defendant stood in front of her and shot her. Ms. Kirk immediately jumped from the couch where she had been sitting and the co-defendant turned the gun on her. She reached out with her right arm to push the shot gun away and felt a burning sensation in her left arm which she saw had been partially shot off. After the shootings, the [appellant and co-defendant] ran from the apartment through the back door.

(Slip Op., McDaniel, J., 6/16/97, pp. 2–4).

On October 18, 1995, appellant, who had just turned 14 years of age, was arrested. The Commonwealth subsequently filed a criminal complaint (OTN C 342980–1) against appellant, accusing him of criminal homicide. Following a preliminary hearing, appellant was committed to the Shuman Center and held for court. Appellant thereafter acknowledged receipt of a criminal information (CC 9516248), charging him with criminal homicide.

On March 29, 1996, the Commonwealth filed a second criminal complaint (OTN C 931359–2), accusing appellant of criminal attempt (homicide), criminal conspiracy[5] and aggravated assault.[6] Subsequently, a preliminary hearing on the additional charges was held before Chief Magistrate William Simmons sitting for Magistrate Daniel Butler.[7]

On April 1, 1996, appellant filed an omnibus pretrial motion, requesting that the matter be transferred to the family division, juvenile section of the court. Appellant claimed the trial court lacked jurisdiction over the non-homicide charges of criminal

---

**5.** Appellant was charged with two counts of conspiracy. However, at a pretrial hearing, the conspiracy counts were combined into a single count of conspiracy to commit aggravated assault on Irene Kirk and/or Elizabeth Turner. *See* H.T., 5/21/96, p. 4. A handwritten note on the second complaint reads "Ct 3 4 [conspiracy counts] combined to conspir to commit AA on Irene Kirk and/or on Eliz Turner."

**6.** A handwritten note on the second complaint reads "Add 1 Ct POW—sawed off shot gun."

However, after the close of evidence at trial, the trial court granted a judgment of acquittal on the charge of prohibited offensive weapons, 18 Pa. C.S. § 908. *See* T.T., 5/21/96, p. 237.

**7.** Although both the trial court and appellant indicate that no preliminary hearing was held until the day of trial, the record clearly shows that a preliminary hearing was held on April 17, 1996.

attempt, criminal conspiracy and aggravated assault (H.T., 5/21/96, pp. 54–56). The trial court denied appellant's motion to transfer; but in the confusion, no criminal information for the non-homicide charges was ever filed. On May 21, 1996, the case proceeded to trial.

As indicated above, appellant was convicted of criminal homicide, criminal attempt, criminal conspiracy and aggravated assault. He was sentenced to six (6) to twenty (20) years' imprisonment for the criminal homicide conviction, as well as a consecutive period of incarceration of from two (2) to ten (10) years for the aggravated assault conviction. Appellant thereafter filed this appeal.

■ On appeal, appellant first claims the trial court lacked subject matter jurisdiction over him because the non-homicide charges were not specified in a criminal information. An information, of course, "is a formal written accusation of an offense made by the attorney for the Commonwealth, upon which a defendant may be tried." Pa.R.Crim.P. 3, **Definitions**. Its purpose "is to inform the accused of the crimes charged." *Commonwealth v. Soboleski*, 421 Pa.Super. 311, 317, 617 A.2d 1309, 1312 (1992). The right to formal notice of charges is guaranteed by the Sixth Amendment to the Federal Constitution and by Article I, Section 9, of the Pennsylvania Constitution. *Commonwealth v. Little*, 455 Pa. 163, 168–170, 314 A.2d 270, 273 (1974). Ordinarily, the requirement of formal notice is satisfied by the defendant's receipt of the criminal information. *See* Pa.R.Crim.P., Ch. 200, Part I. **Informations**.

In *Little*, the Pennsylvania Supreme Court held that subject matter jurisdiction required both that the court be competent to hear the case and that the defendant be provided with a "formal and specific accusation of the crimes charged." *Id.* at 168, 314 A.2d at 273.[8] Appellant equates the requirement of formal notice with the procedure of filing a criminal information. Although Pennsylvania courts have held that a defendant may not be convicted of a crime for which he was

not charged, no court has ever held that subject matter jurisdiction requires the Commonwealth to file a criminal information. A criminal information is only a procedural mechanism, and "[i]t is crucial to recognize [the] purpose [of an information] before adhering to a requirement which neither furthers this purpose nor conforms with the current law." *Soboleski, supra* at 317, 617 A.2d at 1312.

In *Commonwealth v. Clark*, 354 Pa.Super. 366, 511 A.2d 1382 (1986), the court considered appellant's argument that the trial court lacked jurisdiction to accept a guilty plea to a crime not charged in the information and found that the requirement of "a formal and specific accusation" was satisfied by the criminal complaint filed against appellant. *Id.* at 371, 511 A.2d at 1384. *See also Commonwealth v. Diaz*, 477 Pa. 122, 383 A.2d 852 (1978) (finding that in the absence of a grand jury indictment, the formal notice requirement was satisfied by a criminal complaint). This Court sees no meaningful distinction between the *Clark* case and this action.[9] Here, as in *Clark*, the requirement of formal notice was met by a criminal complaint. The second criminal complaint, dated March 29, 1996, stated the date of the crime, identified the victims and specifically described the non-homicide charges which had not been specified in the prior criminal information. Moreover, it should also be noted that appellant had actual knowledge of the non-homicide charges, as appellant's counsel had sought to have them transferred to the Court of Common Plea's Family Division, Juvenile Section (H.T., 5/21/96, pp. 54–56).

■ This Court holds that the requirement of a formal and specific accusation of crimes charged may be satisfied by a criminal complaint, which is specific as to (1) the date of the crime(s) charged, (2) the identity of the victim(s) and (3) the acts allegedly done by the defendant. *See Clark, supra* at 370–372, 511 A.2d at 1384; *Diaz, supra* at

---

**8.** The competency of the criminal division of the Court of Common Pleas to hear this case is clearly established by *Commonwealth v. Romeri*, 504 Pa. 124, 470 A.2d 498 (1983).

**9.** Although a guilty plea results in the waiver of most defenses, an objection to subject matter jurisdiction can never be waived. *Commonwealth v. Khorey*, 521 Pa. 1, n. 10, 555 A.2d 100, 106 n. 10 (1989).

124–128, 383 A.2d at 854–855. In this case, the complaint meets these requirements. Consequently, the trial court properly exercised subject matter jurisdiction over the instant action.

In disputing the trial court's subject matter jurisdiction, appellant relies primarily on two cases: *Commonwealth v. Hoffman,* 406 Pa.Super. 583, 594 A.2d 772 (1991), and *Commonwealth v. Speller,* 311 Pa.Super. 569, 458 A.2d 198 (1983). However, appellee correctly notes that the above cases concern a situation in which the information or final document filed, fails to inform the defendant of all the charges brought against him. More specifically, the two cases involve a single criminal complaint superseded by an information, which fails to include summary offenses. In contrast, this case concerns two separate criminal complaints. The second criminal complaint provided appellant with formal notice of the charges, and no information or other document superseded the complaint so as to subject appellant to new and unexpected charges. As a result, the cases cited by appellant are distinguishable.

■ Aside from the trial court's subject matter jurisdiction, appellant challenges the sufficiency of the evidence. Appellant claims the evidence is insufficient to support his conviction for criminal conspiracy or his liability as an accomplice. However, when reviewing a sufficiency of the evidence claim, this Court's standard of review is clear.

> [W]e view all of the evidence and the reasonable inferences to be drawn from that evidence in the light most favorable to the Commonwealth as verdict winner to determine if the evidence was sufficient to enable the fact finder to conclude that all of the elements of the offenses were established beyond a reasonable doubt.

*Commonwealth v. Collins,* 703 A.2d 418, 420 (Pa.Super.1997). When viewed in the light most favorable to the Commonwealth, the evidence in this case is as follows: (1) appellant entered the victim's home with a person who was openly carrying a shot gun (T.T. at 100); (2) appellant searched the closet for other guns (T.T. at 101); (3) appellant locked the door and tried to close the window when the shooter directed him to do so (T.T. at

126–127); (4) appellant stood beside the shooter and smiled or laughed during the shootings (T.T. at 148); and (5) following the shooting, appellant ran from the home with the shooter (T.T. at 108).

■ Pennsylvania's Crimes Code defines criminal conspiracy as follows:

> **(a) Definition of conspiracy.**—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

.    .    .    .    .

> **(e) Overt act.**—No person may be convicted of conspiracy to commit a crime unless an overt act in pursuant of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903, **Criminal conspiracy.** Generally, a conspiracy conviction requires proof of (1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. *Commonwealth v. Rios,* 546 Pa. 271, 684 A.2d 1025 (1996).

■ After reviewing the evidence, this Court finds it sufficient to support appellant's conviction for conspiracy to commit aggravated assault. The facts demonstrate that appellant surmised his co-conspirator's plan to shoot the victims and intended to aid his co-conspirator in furtherance of the unlawful act. He came into the room while his companion carried a loaded shotgun, he attempted to close the window and locked the door at his co-conspirator's request and returned to his side while he terrorized the women. The conduct and circumstances of appellant and his co-conspirator show the presence of an implicit agreement between the two men.

Finally, the shooting, followed by the two fleeing together, undeniably constitutes an overt act in furtherance of the conspiracy.

 Appellant's final contention is that the evidence presented in this case was insufficient to support his liability as an accomplice. An accomplice is defined as follows:

(c) **Accomplice defined.**—A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aides or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S. § 306, **Liability for conduct of another; complicity.** This Court examines accomplice culpability through a two-step process. *Commonwealth v. Wagaman,* 426 Pa.Super. 396, 627 A.2d 735 (1993). First, the Court establishes whether the accomplice acted in such a way that he solicited or aided another's criminal conduct. *Id.* Second, the Court determines whether any act was committed with the intent of promoting or facilitating the crime. *Id.*

 We find the evidence sufficient to support appellant's liability as an accomplice. By locking the door and trying to close the window, appellant clearly and directly aided his co-defendant's criminal conduct. Moreover, the intent required for accomplice liability is identical to that required for criminal conspiracy. *Commonwealth v. Allen,* 425 Pa.Super. 615, 625 A.2d 1266 (1993). By determining that appellant possessed the intent required for criminal conspiracy, this Court necessarily found that appellant acted with the intent of promoting or facilitating the commission of a crime.

For the foregoing reasons, the trial court correctly exercised jurisdiction over appellant. In addition, there was sufficient evidence to support appellant's conviction for conspiracy and appellant's liability as an accomplice.

Judgment of sentence affirmed.