J-S25006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICARDO BATISTA, | |
| Appellant | No. 2268 EDA 2016 |

Appeal from the Judgment of Sentence Entered May 31, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0004269-2015

BEFORE:  BENDER, P.J.E., RANSOM, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                **FILED JUNE 06, 2017**

Appellant, Ricardo Batista, appeals from the judgment of sentence of an aggregate term of 10½ to 21 years' imprisonment, imposed after he was convicted of one count each of criminal conspiracy to commit aggravated assault (18 Pa.C.S. § 903), possession of a firearm without a license (18 Pa.C.S. § 6106), possession of a firearm on the streets of Philadelphia (18 Pa.C.S. § 6108), possession of a firearm by a prohibited person (18 Pa.C.S. § 6105), and possession of an instrument of crime (18 Pa.C.S. § 907). Appellant challenges the sufficiency of the evidence to sustain his conviction for conspiracy to commit aggravated assault.  We affirm.

The facts which led to Appellant's convictions are set forth by the trial court in the following portion of its Pa.R.A.P. 1925(a) opinion:

> On November 17, 2014, at approximately 4:00 p.m.,
> Dominique Scott looked outside the window of her residence

near the corner of Water Street and Tioga Street and saw her brother, Abdul Scott, being attacked by a group of three young men.[2] Dominique identified the attackers as Ray, [Appellant], and [Appellant's] brother.[3] Dominique left the residence, accompanied by her other brother, Jabbar Scott.

> [2] Because Dominique Scott, Abdul Scott and their brother, Jabbar Scott, all share the same last name, they will be identified by their first names throughout this opinion.

> [3] Ray's last name, and [Appellant's] brother's name, were not given at trial.

During the altercation, Ray hit Abdul with a broomstick and [Appellant] got on top of Abdul. The fight then expanded to include several other individuals, with [Appellant], Ray, Jose Rivera, and two unidentified females fighting against Dominique, Jabbar, Abdul, and Isiaha DeJesus-Rios. Abdul and [Appellant] began to fight over a gun, as Abdul attempted to wrestle the gun out of [Appellant's] hands. [Appellant] managed to keep control of the firearm and raised it, causing Dominique, Abdul, and Jabbar to flee the area. Ray also was in possession of a firearm. As Dominique, Abdul, and Jabbar fled the area, Ray fired his gun twice, striking Jabbar once in the right buttock.

Dominique fled to Brother's Bar, at the corner of Water Street and Ontario Street, where she locked herself inside the bar's bathroom and called police. Ray and Rivera came to the bar, attempting to find Dominique, who stayed in the bathroom until police arrived.

After getting shot, Jabbar went to the home of Margarita Rios, accompanied by his brother Abdul. Abdul attempted to administer first-aid until police arrived. Neither Abdul nor Jabbar cooperated with police once police arrived. Jabbar was taken to the hospital by an ambulance, where he was treated for the gunshot wound to his right buttock.

A video surveillance camera, located at the intersection of Tioga Street and Lee Street captured Jabbar, Ray, Rivera, and other individuals as they travelled past the area of the shooting, but did not record the shooting itself. Police recovered two 9-mm fired cartridge cases on the street. A 9-mm projectile was recovered from Jabbar's body by hospital personnel. Later examination confirmed that the two cartridge cases were fired from the same firearm. Police located [Appellant] on January

- 2 -

15, 2015. [Appellant] provided a fake name to police, and attempted to flee while being taken into custody.

Trial Court Opinion ("TCO"), 9/2/16, at 2-3 (citations to the record omitted).

Based on the aforementioned evidence presented at a jury trial on March 3, 2016, Appellant was found guilty of the crimes stated *supra*, and was sentenced by the court to 10 ½ to 21 years' incarceration. *Id.* at 1. Appellant did not file post-sentence motions. Appellant failed to file a timely notice of appeal, but he filed a petition under the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9541-9546, seeking the reinstatement of his appellate rights. *Id.* The court granted Appellant's PCRA petition on July 15, 2016.

On July 19, 2016, Appellant filed a timely notice of appeal, followed by a timely concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant presents the following sole issue for our review: "Was the evidence insufficient to sustain [Appellant's] conviction for [c]onspiracy to [c]ommit [a]ggravated [a]ssault where the Commonwealth presented no evidence of communication, interaction, or agreement between [Appellant] and the shooter in the case?" Appellant's Brief at 3.

To begin, we note our standard of review:

In reviewing a sufficiency of the evidence claim, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all elements of the offense. Additionally, we may not reweigh the evidence or substitute our own judgment for that of the fact finder. The evidence may be entirely circumstantial as long as it links the accused to the crime beyond a reasonable doubt.

***Commonwealth v. Koch***, 39 A.3d 996, 1001 (Pa. Super. 2011) (citations omitted).

As this Court has previously explained, a criminal conspiracy conviction requires proof of:

> (1) An intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy. Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be proved inferentially by circumstantial evidence, i.e., the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators.
>
> ***Commonwealth v. Galindes***, 786 A.2d 1004, 1010 (Pa. Super. 2001) (quoting ***Commonwealth v. Spotz***, … 756 A.2d 1139, 1162 (Pa. 2000)). Circumstantial evidence can include, but is not limited to, the relationship between the parties, the knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode. ***Commonwealth v. French***, … 578 A.2d 1292, 1294 (Pa. Super. 1990). "These factors may coalesce to establish a conspiratorial agreement beyond a reasonable doubt where one factor alone might fail." ***Id.*** Aggravated assault, the crime underlying [the] [a]ppellant's conspiracy conviction, occurs when a person "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting an extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). Serious bodily injury is defined as "bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301.

***Commonwealth v. Thomas***, 65 A.3d 939, 943-44 (Pa. Super. 2013).

Appellant asserts that the evidence was insufficient to support his conspiracy conviction because, "[w]hile the evidence established that

[Appellant] and the shooter both engaged in a fight with Jabar [*sic*] Scott and other members of his family, and that [Appellant] possessed a firearm, the record was devoid of any evidence establishing that [Appellant] and Ray agreed to shoot Jabar [*sic*] Scott." Appellant's brief at 8. Appellant claims, rather, that "the evidence was equally consistent with [Appellant] and the shooter acting independent of one another." ***Id.*** Accordingly, Appellant concludes that his conviction of conspiracy to commit aggravated assault must be vacated. ***Id.*** We disagree.

"In order to sustain a conviction of criminal conspiracy to commit aggravated assault, the Commonwealth need only establish intent to commit or aid in the commission of aggravated assault, an agreement with a co-conspirator, and an overt act in furtherance of the conspiracy." ***Thomas***, 65 A.3d at 945. The Commonwealth may meet this burden even if the conspirators fail to commit the underlying crime of aggravated assault, as "[c]onspiracy to commit a crime and the underlying crime itself are two entirely separate offenses with separate elements required for each." ***Id.*** at 944. Therefore, as we stated in ***Thomas***, "to sustain the conviction for criminal conspiracy, it need not be established that Appellant committed aggravated assault, provided that Appellant had the intent to do so." ***Id.***

This Court has held in previous cases that "acting together before, during, and after an attack on another individual suffices to show a unity of criminal purpose for purposes of sustaining a conviction for criminal conspiracy to commit aggravated assault." ***Id.*** at 945 (citing

*Commonwealth v. French*, 578 A.2d 1292, 1294-95 (Pa. Super. 1990);

*Commonwealth v. Poland*, 26 A.3d 518, 523 (Pa. Super. 2011)).  In the

present case, the trial court concluded that "the evidence clearly established

that [Appellant] acted in concert with Ray to assault Abdul, which lead [*sic*]

to the shooting of Jabbar."  TCO at 4.  The trial court recounts the following

evidence in support of its finding:

> Dominique Scott testified that she looked out her window and saw her brother, Abdul, getting "jumped" by Ray, [Appellant], and [Appellant's] brother.  Dominique testified that she then left her house to assist Abdul and saw Ray strike Abdul with a broomstick, followed by [Appellant] getting on top of Abdul. While [Appellant] and Abdul were fighting on the ground, Dominique testified that she saw a gun "slide out" and that Abdul was attempting to get the gun out of [Appellant's] hand. Dominique further testified that this fight over the gun included an additional, unidentified person, who was on top of Abdul. Dominique testified that [Appellant] ultimately got control of the gun and pointed it at her and her brothers, causing them to run away from the area.  While Dominique testified at trial that [Appellant] fired his gun twice, in her preliminary hearing testimony, which was admitted at trial, she indicated that Ray was the shooter.  Dominique also testified that Ray was a drug dealer who worked on the block, and that [Appellant] worked for Ray.  She further testified that Rivera, who assisted [Appellant] and Ray in the fight, also worked for Ray.
>
> Isiaha De Jesus-Rios was interviewed by police shortly after the shooting.  He informed the police that he witnessed a fight between a boy and Dominique, Abdul, and Jabbar. Dominique was his aunt, and Jabbar and Abdul were his uncles. DeJesus-Rios identified [Appellant] as one participant who possessed a gun during the fight, but stated that [Appellant] was not the person who fired a gun two times.  DeJesus-Rios also testified that Jabbar and Abdul were present in his home after the shooting, and that Jabbar was bleeding.  That Jabbar had been shot was confirmed by the testimony of Officer Robert Glasson, who first responded to the scene, and by stipulation to the medical treatment given to Jabbar.

There was also compelling evidence establishing [Appellant's] consciousness of guilt. Officer John Sasse testified that on January 15, 2015, while on regular patrol, he and his partner observed [Appellant], who they recognized as having an outstanding arrest warrant in connection with this shooting, driving a minivan. Officer Sasse testified that he pulled [Appellant's] car over and that [Appellant] provided a fake name when asked to identify himself. When placing [Appellant] under arrest, Officer Sasse testified that [Appellant] attempted to flee, but was restrained by the arresting officers.[1]

TCO at 4-6 (citations to the record omitted).

Based on the foregoing evidence, the court concluded that:

[T]here was compelling evidence from which a reasonable factfinder could conclude that [Appellant] agreed to act in concert with Ray to fight Abdul and Abdul's family, and that during the course of this fight, one of the conspirators shot Jabbar. [Appellant] and Ray both fought with Abdul, both brought firearms to this fight, and [Appellant] worked for Ray at the time of this fight. When police effectuated the arrest warrant issued against [Appellant], [Appellant] lied to police concerning his identity and tried to flee. This evidence was clearly sufficient to permit the jury to conclude that [Appellant] conspired with Ray in order to commit aggravated assault.

*Id.* at 6.

Based on our review of the facts in the light most favorable to the Commonwealth as the verdict winner, we conclude there was sufficient evidence to support the trial court's finding that Appellant conspired with

---

[1] "This Court has repeatedly held that flight, along with other circumstantial evidence, supports the inference of a criminal conspiracy." *Commonwealth v. Marquez*, 980 A.2d 145, 150 (Pa. Super. 2009) (citing *Commonwealth v. Davalos*, 779 A.2d 1190 (Pa. Super. 2001); *Commonwealth v. Hatchin*, 709 A.2d 405 (Pa. Super. 1998)).

Ray to commit aggravated assault. Therefore, we uphold Appellant's conviction.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/6/2017