J-S06008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| RUDOLPH WOODSON | |
| Appellant | No. 2444 EDA 2015 |

Appeal from the Judgment of Sentence July 20, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0003786-2014

BEFORE: MOULTON, J., RANSOM, J., and FITZGERALD, J.[*]

MEMORANDUM BY MOULTON, J.: **FILED JUNE 29, 2017**

Rudolph Woodson appeals from the July 20, 2015 judgment of sentence entered in the Philadelphia County Court of Common Pleas following his bench trial convictions for criminal attempt to commit murder, aggravated assault, simple assault, recklessly endangering another person ("REAP"), and possessing an instrument of crime ("PIC").[1] Woodson's appellate counsel has filed a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and a petition to withdraw from representation. Because we find a non-frivolous issue of record, we deny counsel's petition to withdraw and direct counsel to file an advocate's brief.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901(a), 2702(a), 2701(a), 2705, and 907(a), respectively.

The trial court set forth the following factual and procedural history:

On January 24, 2014, . . . Woodson[] was arrested and charged with [the aforementioned offenses]. [Woodson] went to trial before this Court on March 16, 2015 . . .

At the trial for [Woodson], the complainant, [Victim], testified that she had first met [Woodson] about a month or two before January 24, 2014 and they had hung out a few times prior to that date. She testified that in the late hours of January 23, 2014, [Woodson] had picked her up so that the two of them could go out to eat. Before they went to go eat, she testified that [Woodson] asked her if she wanted to get some drugs and they went to her neighborhood to buy some [phencyclidine ("PCP")]. After buying the PCP, they then went back to [Woodson]'s house . . . [on] Butler Street in Philadelphia, PA. [Victim] testified that once at his house, they went up to his bedroom where she had been before and they sat on his bed where they talked and [Woodson] smoked the PCP. She testified that [Woodson] then left the room and when he came back in the room he jumped on her while she was sitting on the bed and started stabbing her. [Victim] testified that [Woodson] was stabbing her everywhere "in my face and my neck…. he stabbed me in my hand, stabbed me in my wrist, he stabbed me right here.["] [Victim] went on to show the Court all the places on her body where she had been stabbed or cut and pictures of her injuries [were] admitted into evidence.

[Victim] testified that at some point [Woodson] stopped stabbing her and walked out of the room. When she tried to leave [Woodson] pushed her back into another room and "started stabbing me more and hitting me in the head and bent over me, threatening me, and talking trash." [Woodson] then started to wipe up the blood and that is when [Victim] tried to use her phone to call her sister and 9-1-1. [Woodson] told her to get up and leave so she managed to get down the steps and went out the front door. When she got outside she initially fell to the ground but was able to get herself back up and make it over to the Checkers by his house where she laid down near a telephone pole. [Woodson] followed her in his van and

- 2 -

tried to get her to go inside but she would not. At that point the police officers arrived on the scene.

Police Officers Ray Sutton and Jacqueline McAllister both testified that on January 24, 201[4], they responded to a call to go [to] Broad and Butler Streets. Officer Sutton testified that when he and his partner arrived at the location, he observed [Victim] laying down in a fetal position in the snow near a telephone pole close to Checkers. There was blood around her. Officer McAllister testified that [Victim] was unresponsive and that she had blood all over her face, her head, her neck, and her chest. She tried to say something to the officers at first but then she went completely out of it. The officer then called for an ambulance. Both officers testified that [Woodson] was there at the scene and that he did not have any visible signs of injury nor did h[e] tell them he needed any medical attention. Officer Sutton testified that [Woodson] stated to them that he had stabbed [Victim] after the two of them had been involved in an altercation. [Woodson] was then placed under arrest and put into the back of the police vehicle. [Woodson] told the officers that the incident occurred at his home [on] Butler Street. [Woodson] indicated to them that the knife he had washed off [was] in the kitchen. Officer McAllister testified that he then went over to [Woodson]'s home to secure the scene. When he arrived there, he noticed blood on the doorway leading up to the steps, blood on the wall all the way up the steps, blood all over the hallway, and blood all over the room, on the mattress, and on the floor. The pictures of the crime scene that were taken were placed into evidence which Officer McAllister described for the Court. Police Officer Edward Fidler from the Philadelphia [Police C]rime [S]cene [U]nit also testified and described the photographs that were admitted into evidence depicting the crime scene and the knife that was recovered from [Woodson]'s home.

. . .

[At the conclusion of the trial,] the Court found [Woodson] guilty of all charges[. On July 20, 2015, the trial court sentenced Woodson] . . . to fifteen to forty years incarceration on the attempted murder[,] which the aggravated and simple assault had merged with, two and a half to five years incarceration consecutive on PIC, and one

- 3 -

to two years incarceration consecutive on REAP, for a total sentence of eighteen and a half to forty-seven years incarceration.

Trial Ct. Op., 2/9/16, at 1-4 (citations omitted). On August 13, 2015, Woodson timely filed a notice of appeal. That same day, Woodson's trial counsel filed a motion to withdraw, which the trial court granted. Woodson was appointed appellate counsel, who, on December 1, 2015,[2] filed a statement of intent to file an **Anders** brief pursuant to Pennsylvania Rule of Appellate Procedure 1925(c)(4). On February 9, 2016, the trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).[3]

On July 21, 2016, appellate counsel filed an **Anders** brief and a petition to withdraw as counsel with this Court. On September 19, 2016, Woodson filed two applications for relief with this Court: one asking this Court to dismiss his appellate counsel and allow him to proceed *pro se*, and the other "requesting leave of the Court to . . . exercise U.S. Constitutional First Amendment guarantee right to petition lower court to properly exhaust available state court remedies for relief in order to determine the ultimate facts." App. for Remand, 9/16/16 (unnecessary capitalization omitted). On

_____

[2] On September 4, 2015, Woodson's trial counsel filed a Pennsylvania Rule of Appellate Procedure 1925(b) statement, raising three issues. In his Rule 1925(c)(4) statement, appellate counsel notes these issues and their lack of merit.

[3] Woodson also filed a number of letters directed to trial and appellate counsel with this Court. In accordance with **Commonwealth v. Jette**, 23 A.3d 1032 (Pa. 2011), this Court noted Woodson's filings and forwarded the letters to his appellate counsel of record.

October 7, 2016, we granted Woodson leave to file a response, either *pro se* or through privately retained counsel, within 30 days. On November 15, 2016, Woodson filed a *pro se* response to the motion to withdraw.

When presented with an **Anders** brief, this Court may not review the merits of the underlying issues until we address counsel's request to withdraw. **Commonwealth v. Goodwin**, 928 A.2d 287, 290 (Pa.Super. 2007) (*en banc*). Before we address the issues raised in the **Anders** brief, we must first determine whether counsel's petition to withdraw satisfies the procedural requirements of **Anders**. To be permitted to withdraw, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to the defendant; and 3) advise the defendant that he or she has the right to retain private counsel or raise additional arguments that the defendant deems worthy of the court's attention.

**Commonwealth v. Cartrette**, 83 A.3d 1030, 1032 (Pa.Super. 2013) (*en banc*).

Here, appellate counsel has petitioned the court stating that after a conscientious examination of the record, "[he] f[ou]nd the appeal to be wholly frivolous." Pet. to Withdraw, 7/21/16, at 1. Appellate counsel has also certified that he furnished a copy of the **Anders** brief to Woodson and sent Woodson a letter advising him that "[he] ha[s] the right to retain new counsel to pursue the appeal or to proceed *pro se* to raise any points that [he] deem[s] worthy of the Court's attention." Ltr. to Woodson, 7/21/16.

We conclude that counsel's petition to withdraw complies with the procedural dictates of **Anders**.

We must next determine whether counsel's **Anders** brief meets the requirements established by the Pennsylvania Supreme Court in **Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009). The brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 361.

Here, appellate counsel has provided a summary of the procedural and factual history with appropriate citations to the record. Counsel has evaluated the sufficiency and weight of the evidence, as well as Woodson's sentence, stated that such an appeal is frivolous, and set forth his reasons for that conclusion. We conclude that appellate counsel has complied with the minimum technical requirements of **Anders** and **Santiago**. However, because Woodson's *pro se* response identified a non-frivolous issue not raised in counsel's **Anders** brief, we conclude that appellate counsel has failed to meet the substantive requirements of **Anders** and **Santiago**.

Woodson has filed a *pro se* response to counsel's **Anders** brief and petition to withdraw. While normally we would address the issues raised in

the **Anders** brief first, our review of Woodson's *pro se* response and the record reveals a non-frivolous issue that requires further briefing.

In his *pro se* response, Woodson argues that his sentence is illegal because he was "not charged, tried, and convicted of attempted murder resulting in serious bodily injury[.]" Woodson's Resp. at 8. Woodson thus claims that "the fact finder was limited to a finding of guilty and sentencing on attempted murder generally." **Id.**

Attempted murder, whether or not serious bodily injury is inflicted, is charged under the criminal attempt provision in section 901 of the Crimes Code. **See** 18 Pa.C.S. § 901. Section 1102(c) governs the maximum sentences for attempted murder:

> **(c) Attempt, solicitation and conspiracy.--** Notwithstanding section 1103(1) (relating to sentence of imprisonment for felony), a person who has been convicted of attempt, solicitation or conspiracy to commit murder, murder of an unborn child or murder of a law enforcement officer where serious bodily injury results may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 40 years. Where serious bodily injury does not result, the person may be sentenced to a term of imprisonment which shall be fixed by the court at not more than 20 years.

18 Pa.C.S. § 1102(c). "Thus, the statute imposes a condition precedent to the imposition of a maximum term of imprisonment of up to forty years, specifically, that 'serious bodily injury' must have resulted from the attempted murder. Otherwise, the sentence shall be not more than twenty years." **Commonwealth v. Johnson**, 910 A.2d 60, 66 (Pa.Super. 2006).

In ***Johnson***, we held that, pursuant to the United States Supreme Court's decision in ***Apprendi v. New Jersey***, 530 U.S. 466 (2000), where the defendant is charged with attempted murder — serious bodily injury inflicted, it is "solely the responsibility of the jury . . . to find, beyond a reasonable doubt, whether a serious bodily injury resulted from the . . . attempted murder." ***Id.*** at 67. There, we concluded that Johnson could only be sentenced to the maximum 20 years' incarceration for attempted murder because

> (1) [he] was not charged with attempted murder resulting in serious bodily injury, (2) [he] was not on notice that the Commonwealth sought either to prove that a serious bodily injury resulted from the attempted murder or to invoke the greater maximum sentence, and (3) the jury was never presented with, nor rendered a decision on, the question of whether a serious bodily injury resulted from the attempted murder.

***Id.***

In contrast, in ***Commonwealth v. Reid***, 867 A.2d 1280 (Pa.Super. 2005), despite recognizing the possible ***Apprendi*** issue, we upheld a maximum sentence of 40 years' incarceration where Reid was not formally charged with attempted murder — serious bodily injury inflicted. We reasoned that because Reid pled *nolo contendere* after the Commonwealth had indicated its desire to seek a maximum sentence of 40 years' incarceration and recited facts showing that Reid inflicted serious bodily injury, Reid's rights were not violated.

Here, neither the criminal complaint nor the criminal information charged Woodson with attempted murder — serious bodily injury inflicted. In his written jury trial waiver, Woodson acknowledged a possible maximum sentence of 40 years. *See* Jury Tr. Waiver Colloquy, 3/16/15, at 3. Further, at the oral colloquy, the following exchange occurred:

> THE COURT: Do you have any questions about the charges against you, sir?
>
> [WOODSON]: I been pretty much familiar with them.
>
> THE COURT: I'll just go over them now.
>
> **Attempted murder is a felony of the first degree. It has a maximum sentence of 40 years in prison** and a $25,000 fine. Aggravated assault is a felony of the first degree. You can go to jail for 20 years and get a $25,000 fine. Do you have any questions about those charges?
>
> [WOODSON]: No.

N.T., 3/16/15, at 7 (emphasis added). However, neither the written nor the oral colloquy referenced the element of serious bodily injury. At the conclusion of the trial, the trial court found Woodson guilty of attempted murder and found that he possessed a specific intent to kill and that he caused serious bodily injury. N.T., 3/19/15, at 37. These factual circumstances arguably fall somewhere between *Johnson* and *Reid*.

Further, Woodson also challenges the sufficiency of the criminal information and the Commonwealth's failure to amend the criminal information. According to Woodson, the Commonwealth charged him only with attempted murder generally, instead of attempted murder — serious

bodily injury inflicted, and never amended the criminal information to include the element of serious bodily injury. Woodson thus argues that the Commonwealth did not give him proper notice that serious bodily injury was an issue in the attempted murder charge and, therefore, the trial court could only impose a maximum sentence of 20 years' incarceration.

Generally, the Commonwealth's provision of a criminal information to the defendant meets the notice requirements of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution. *See Commonwealth v. Hatchin*, 709 A.2d 405, 408 (Pa.Super. 1998). The Sixth Amendment and Article I, Section 9 "require that the accused be provided with sufficient notice to prepare a defense and to ensure that he will not be twice put in jeopardy for the same offense." *Commonwealth v. Alston*, 651 A.2d 1092, 1094 (Pa. 1994). Similarly, "an [i]nformation is sufficient if it sets forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet, and may plead double jeopardy in a future prosecution based on the same set of events." *Id.* at 1095. "This may be accomplished through use of the words of the statute itself as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished.'" *Id.* at 1095-96 (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

- 10 -

However, if there is "a variance between the allegations of an information and proof at trial, such variance is harmless error unless a defendant could be misled at trial, prejudicially surprised in efforts to prepare a defense, precluded from anticipating the prosecution's proof, or otherwise impaired with respect to a substantial right." **Commonwealth v. Lohr**, 468 A.2d 1375, 1377 (Pa. 1983).

As noted above, the record shows that neither the criminal complaint nor the criminal information charged Woodson with attempted murder — serious bodily injury inflicted, and Woodson was only apprised of the possible maximum sentence of 40 years' incarceration immediately before trial, without an explanation that such a sentence required the Commonwealth to prove that Woodson inflicted serious bodily injury. Thus, while it appears that Woodson understood that he could face 40 years' incarceration, it is unclear whether Woodson understood that this was an enhanced penalty predicated on a finding that he inflicted serious bodily injury. Considering that the Sixth Amendment and Article I, Section 9 require that the criminal information "set[] forth the elements of the offense intended to be charged with sufficient detail that the defendant is apprised of what he must be prepared to meet," **Alston**, 651 A.2d at 1095, we conclude that this issue is not wholly frivolous.[4]

_____

[4] In light of this disposition, we do not address the other issues raised in the **Anders** brief and Woodson's _pro se_ response. The unresolved
_(Footnote Continued Next Page)_

Because a non-frivolous issue appears of record, we deny appellate counsel's petition to withdraw and direct counsel to file an advocate's brief within 45 days addressing the issue identified above.[5] The Commonwealth may file a response brief within 30 days of the filing of the advocate's brief.

Petition to withdraw denied. Jurisdiction retained.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2017

---

*(Footnote Continued)* ───────────

question whether the trial court was permitted to find Woodson guilty of attempted murder — serious bodily injury bears on the sufficiency of the evidence, the weight of the evidence, and the legality of Woodson's sentence.

[5] We do not express an opinion as to the relative merit of this issue, but only conclude that this issue is non-frivolous and requires briefing.