J-S54025-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
RICHARD MULIEK KEARNEY :
:
Appellant : No. 358 MDA 2020

Appeal from the PCRA Order Entered January 28, 2020
In the Court of Common Pleas of Fulton County Criminal Division at
No(s): CP-29-CR-0000227-2011

BEFORE: NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED APRIL 09, 2021**

Richard Muliek Kearney appeals *pro se* from the order denying his Amended Petition filed under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Kearney claims the trial court lacked jurisdiction and violated his due process rights by appointing counsel before he had received notice of the charges, and that his trial counsel was ineffective for failing to raise the issue and for failing to challenge the offense gravity score ("OGS") the court used at sentencing. We affirm.

We previously summarized the underlying facts of the case on direct appeal. *See Commonwealth v. Kearney*, 92 A.3d 51, 56 (Pa.Super. 2014). In short, Tabetha Lynn Mellott agreed to house her friend and three other people – including Kearney and Kearney's co-defendant – for one night in June 2011. In the morning, after Mellott's friend and the third person had left, Kearney and his co-defendant accosted Mellott. Kearney used a small silver

handgun to force Mellott to strip, squat, and cough, and he searched her and her residence for drugs. Kearney and his co-defendant held Mellott at gunpoint for several hours. Kearney also pointed the handgun at the face of Joshua Weaver, another person at the residence, and took a shotgun he found there.

The Commonwealth filed a Complaint in Magisterial District Court on July 13, 2011. By that time, Kearney had already been arrested and was being detained on other, related charges. *See* PCRA Court Opinion and Order, filed Jan. 27, 2020, at 10-11; Kearney's Ex. 001 at 1. The district court scheduled Kearney's preliminary arraignment for August 1, 2011. *See* Magisterial District Court Docket, 10/18/11, at 1-2. Kearney's counsel requested a continuance. The district court continued Kearney's preliminary arraignment until October 17, 2011, and scheduled the preliminary hearing for that date as well. *See id.* Following the preliminary arraignment and preliminary hearing, the charges against Kearney were bound over for trial in the court of common pleas. *See id.*

In November 2011, the Commonwealth filed an Information, and the trial court formally arraigned Kearney. The court reviewed each count listed in the Information with Kearney and read him his Statement of Rights. *See* Order, 11/8/11, at 1; Information, 11/8/11, at 1-2. Kearney later requested, and the Commonwealth filed, a Bill of Particulars.

Following trial on April 26, 2012, a jury found Kearney guilty of Persons Not to Possess Firearms, Firearms Not to be Carried Without a License, and two counts each of Criminal Coercion, Terroristic Threats, Unlawful Restraint,

and Simple Assault.[1] The court sentenced Kearney to an aggregate term of 144 to 288 months' incarceration. We affirmed the judgment of sentence, and the Pennsylvania Supreme Court denied Kearney's petition for allowance of appeal on September 30, 2014.

Kearney filed a PCRA petition, *pro se*, on April 24, 2015, and filed PCRA petitions on three other, related cases as well. The PCRA court appointed counsel, who filed a supplemental petition relating to all four cases. The PCRA court held an evidentiary hearing on January 2, 2018. Kearney then moved to proceed *pro se*, and, following a hearing on the motion, the court permitted Kearney's counsel to withdraw. Kearney filed a *pro se* 55-page Amended PCRA Petition relating to all four cases on January 4, 2019. The court held further evidentiary hearings on May 7, 2019, and January 7, 2020. The PCRA court denied the Amended Petition, insofar as it related to the instant case. Kearney appealed.[2]

Kearney raises the following issues:

1. Did the Clerk of Court's addition of Case 227-2011, to an existing Court Order, exceed the scope of her ministerial duties under 42 Pa. C.S. § 2757? If so, did the PCRA Court err in refusing to strike that addition and correct the record upon oral motion of [Kearney]?

2. Did the PCRA Court err in refusing to conduct an [sic] due process analysis into the harm and prejudice[ Kearny] had

---

[1] **See** 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 2906(a)(1), 2706(a)(1), 2902(a)(1), and 2701(a)(3), respectively.

[2] Kearney's notice of appeal appropriately references only the instant docket number.

suffered as an [sic] direct result of the Clerk of Court['s] addition of Case 227-2011 to an existing Court Order appointing substitute Counsel, when in fact criminal proceedings in Case 227-2011, were not instituted against [Kearney]?

3. Did the Fulton County Courts acquire jurisdiction over [Kearney]'s person to demand him before a court to answer to accusations not lawfully instituted against him in accordance with lawful process?

4. In Case No. CP-29-CR-227-2011, where criminal proceedings were not instituted against [Kearney], by the issuance of an [sic] valid criminal complaint and arrest warrant, has the statute of limitations, under 42 Pa. C.S. § 5522(a), and (b), since then expired, requiring [Kearney's] immediate discharge?

5. Did the PCRA Court err, by denying [Kearney]'s ineffective counsel claim, regarding trial counsel failure to obtain corroboration to [Kearney's] assertions, and challenge the lack of personal jurisdiction?

6. Could testimonial evidence of [Kearney] possessing a loaded shotgun with ammunition available be used to support higher OGS application regarding a small silver handgun? And if not[, d]id the PCRA Court err in denying [Kearney]'s ineffective assistance of counsel claim, based upon improper evidence, when it is apparent from the record that the loaded shotgun was not the "firearm" referenced at Counts One and Two?

Kearney's Br. at 3-4 (suggested answers omitted).

"When reviewing the denial of a PCRA petition, this Court's standard of review is limited 'to whether the PCRA court's determination is supported by evidence of record and whether it is free of legal error.'" **Commonwealth v. Hart**, 199 A.3d 475, 481 (Pa.Super. 2018) (quoting **Commonwealth v. Pew**, 189 A.3d 486, 488 (Pa.Super. 2018)). "We review the PCRA court's legal conclusions *de novo*." **Id.**

**Issues 1-5**

As Kearney's first five issues are interrelated, we will address them together. Kearney's primary argument is that the trial court appointed him counsel accidentally through an error by the Fulton County Clerk of Courts. He asserts that when this case was first pending in Magisterial District Court, the court appointed the public defender to represent him on three other cases, and the public defender filed a motion to withdraw from those cases, due to a conflict of interest. According to Kearney, when the trial court granted the motion, the trial court not only appointed new counsel on the three other cases, it also accidentally appointed counsel on the instant case.

As an exhibit to his appellate brief, Kearney attaches a motion to withdraw submitted by the public defender, which references only the offense tracking numbers belonging to another one of Kearney's cases, and the charges related to that case. *See* Kearney's Ex. A3 at 1. Kearney also attaches an order of the trial court appointing counsel, which references only the same offense tracking number. *See* Kearney's Ex. A4 at 1. Handwritten on the order, above the offense tracking number, are the abbreviations of the common pleas docket numbers for all four of Kearney's cases. *See id.* Kearney argues that at the PCRA hearing on January 7, 2020, the Clerk of Courts admitted that she wrote all four docket numbers on the order appointing counsel, including the instant case by way of clerical error. Kearney's Br. at 8-9 (citing N.T., 1/7/20 (testimony), at 24).

Kearney contends that before the court accidentally appointed counsel due to the error, he had no knowledge of this case, as he had not been issued an arrest warrant or summons in accordance with the Rules of Criminal Procedure governing the institution of proceedings in court cases.[3] Kearney argues that in addition to his lack of notice, the affidavit of probable cause accompanying the criminal complaint was unverified, as it had not been sworn under oath and in person by the affiant. Kearney's Br. at 13, 18-19 (citing Pa.R.Crim.P. 513(B)). Kearney claims the affiant admitted at trial that he had not taken the complaint to the Magisterial District Judge himself. **Id.** (citing N.T., 4/26/12, at 9).

Kearney argues that after the court accidentally appointed counsel, counsel then filed a continuance request referencing all four cases. **See** Kearney's Ex. 002 at 1 (counsel's continuance request, referencing all four district court docket numbers). According to Kearney, this filing by counsel made it appear that Kearney had submitted to the jurisdiction of the court, and led to the court commencing the case by scheduling the preliminary hearing, circumventing the Rules requiring service.[4] Kearney argues that by

---

[3] **See also** N.T., 1/7/20 (argument), at 4 (Kearney stating there was "no proof of service" prior to the date counsel was appointed).

[4] **See** Kearney's Br. at 19 ("This erroneous appointment of counsel, led to [this case] being included in filings by counsel . . . which led to a preliminary hearing being scheduled . . . which outcome with a trial and conviction to where [Kearney] was thereafter deprived his liberty"); **see also** N.T., 1/7/20 (argument), at 4 (Kearney arguing, "This appointment of counsel was forged, and it constituted an answer to [the] complaint operating to my prejudice instantaneously commencing criminal proceedings against me").

prematurely appointing counsel and proceeding on the case when he had not yet received notice in accordance to the Rules, the trial court violated his right to due process. Kearney also argues that due to the Commonwealth's failure to provide notice and to have the affidavit of probable cause verified by the Magisterial District Judge, the trial court lacked jurisdiction to appoint counsel or schedule a preliminary hearing. Kearney also claims that because the Clerk of Courts did not have authority to add the instant case to the order appointing counsel, the order should be considered a nullity.

Finally, Kearney argues that his trial counsel was ineffective for failing to raise the above issues. He claims counsel testified at the PCRA hearing that he was aware of Kearney's assertions, but did not advance them, and Kearney contends counsel had no reasonable basis for failing to do so.

We find no merit to any of these issues. First, the appointment of counsel was not the result of a clerical error by the Clerk of Courts. As observed by the PCRA court, on the date the trial court appointed counsel, Kearney's "cases were still before the Magisterial District Court, as no preliminary hearings had been held. Accordingly, the Motion [to withdraw] and Order [appointing counsel] were captioned only with an offense tracking number." PCRA Ct. Op. and Order at 6. At the PCRA hearing, the Clerk of Courts explained that she "did not affix Court of Common Pleas Criminal Action numbers until <u>after</u> [Kearney] was preliminarily arraigned and <u>after</u> [Kearney's] preliminary hearing." *Id.* at 6-7 (emphasis in original):

> At the evidentiary hearing held on January 7, 2019, Ms. Fix, the elected Clerk of Courts, credibly testified that the Order [appointing counsel] was filed with her office and held in a temporary file until [Kearney's] cases were bound over to the Court of Common Pleas – likely in October of 2011, as [Kearney's] preliminary hearing . . . was on October 17, 2011. No Criminal Action number would have been assigned until the case was bound over to the Court of Common Pleas. When the transcripts were received from the lower court, believing that she was carrying out her required duty of maintaining an orderly and accurate record, Ms. Fix hand-wrote all four Criminal Action numbers on the Order.

*Id.* at 6.

In sum, the PCRA court found as facts that the order upon which Kearney relies reflects a *post-facto* act of record-keeping by the Clerk of Courts. Although she testified that she must have added all four trial court numbers to the order due to clerical error – after Kearney confronted her with only a single withdrawal motion referencing a single offense tracking number for a different case – her testimony does not establish when counsel was actually appointed on the instant case,[5] or whether counsel was somehow appointed erroneously.[6]

_____

[5] The certified record does not specify when counsel was appointed. We note that only the first two pages of the six-page Magisterial district court docket are in the certified record, and no other document in the record shows the date on which the court appointed counsel.

[6] At the PCRA hearing, the Commonwealth argued that that Magisterial District Judge, "recognizing that these cases all pertained to the same [d]efendant, appointed counsel in those cases since he ha[d] requested counsel in the case that he was already incarcerated for." N.T., 5/7/19, at 64. The Magisterial District Judge testified that counsel was appointed on this case after Kearney applied for a public defender. N.T., 1/7/20 (testimony), at 37-38, 48.

In any event, even assuming Kearney is correct that the court appointed counsel – be it accidentally or purposefully – before he had received any other notice of this case, the appointment of counsel did not deprive Kearney of due process or affect the jurisdiction of the trial court.[7] In a criminal case, the trial court's exercise of subject matter jurisdiction[8] requires the Commonwealth to confront a defendant with a formal and specific accusation of the crimes charged.[9] *Commonwealth v. Jones*, 929 A.2d 205, 211 (Pa. 2007); *McNeil*, 665 A.2d at 1251. "Ordinarily, the requirement of formal notice is satisfied by the defendant's receipt of the criminal information." *Commonwealth v. Hatchin*, 709 A.2d 405, 408 (Pa.Super. 1998); *see also Jones*, 929 A.2d at 211. The Commonwealth may also satisfy this requirement by providing a

---

[7] A challenge to the court's jurisdiction, or a question regarding whether a due process violation occurred, is a question of law. *Commonwealth v. McGarry*, 172 A.3d 60, 65 (Pa.Super. 2017); *Commonwealth v. Tejada*, 161 A.3d 313, 317 (Pa.Super. 2017). Our standard of review is therefore *de novo* and our scope of review is plenary. *Tejada*, 161 A.3d at 317.

[8] Although Kearney, at times, argues the court lacked personal, rather than subject-matter jurisdiction, he also cites authority related to subject matter jurisdiction, and lodged argument regarding subject matter jurisdiction before the PCRA court. *See* N.T. 1/7/20 (argument), at 2. We will therefore limit our discussion to subject-matter jurisdiction. Personal jurisdiction is not implicated in this case, as it is "secured through the defendant's presence within the territorial jurisdiction of the court." *Commonwealth v. McNeil*, 665 A.2d 1247, 1251 (Pa.Super. 1995). That test was unquestionably met here.

[9] Subject matter jurisdiction also relates to the court's power to hear and decide the controversy; however, in Pennsylvania, "courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." *McGarry*, 172 A.3d at 66.

complaint "which is specific as to (1) the date of the crime(s) charged, (2) the identity of the victim(s) and (3) the acts allegedly done by the defendant." ***Hatchin***, 709 A.2d at 408-09.

Procedural due process[10] similarly requires a defendant be afforded "adequate notice and the opportunity to be heard." ***Commonwealth v. Parks***, 768 A.2d 1168, 1172 (Pa.Super. 2001); ***see also Commonwealth v. Wright***, 961 A.2d 119, 132 (Pa. 2008).[11] Among other things, procedural due process "requires that the criminal information provide fair notice of every crime of which a criminal defendant is accused," and "be sufficiently specific so as to allow the defendant to prepare any available defenses should he exercise his right to a trial." ***Commonwealth v. Sims***, 919 A.2d 931, 939 (Pa. 2007).

Here, Kearney alleges he first became aware of this case once the trial court scheduled the preliminary hearing. Kearney attaches a copy of the notice he received scheduling his preliminary hearing. ***See*** Kearney's Ex. 2. The lower court docket confirms that Kearney was not preliminarily arraigned until the date of his preliminary hearing. However, Kearney does not allege that he

---

[10] Both the federal and state constitutions provide a right to due process. ***Commonwealth v. Louden***, 803 A.2d 1181 (Pa. 2002).

[11] "While not capable of an exact definition, the basic elements of procedural due process are adequate notice, the opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." ***Commonwealth v. Turner***, 80 A.3d 754, 764 (Pa. 2013).

did not receive notice of the charges prior to the hearing,[12] or that he was unable to defend himself at the preliminary hearing, let alone by the time of trial. Furthermore, following the preliminary hearing, Kearney was formally arraigned and provided an Information, Statement of Rights, and Bill of Particulars. He has thus failed to establish any defect in the trial court's jurisdiction or any violation of his due process rights.

The PCRA court found that the Magisterial District Court did not issue an arrest warrant following the Commonwealth's filing of the complaint. *See* PCRA Ct. Op. and Order at 11.[13] This was a violation of the Rules of Criminal Procedure. *See* Pa.R.Crim.P. 502 (providing that criminal proceedings in court cases be instated by the filing of a written complaint or an arrest without a warrant), 509(2) (providing that criminal proceedings initiated by a complaint charging a felony or murder be followed by the issuance of an arrest warrant).[14] Although the PCRA court did not determine whether Kearney

---

[12] Although the PCRA court did not make a factual finding on this point, the Magisterial District Judge testified that he faxed a copy of the complaint to the jail where Kearney was being detained on his other charges, and also faxed a summons and an application for a public defender, the latter of which Kearney returned. *See* N.T., 1/7/20 (testimony), at 34, 36, 48.

[13] The Commonwealth did not dispute that the court failed to issue an arrest warrant, *see* N.T., 1/2/18, at 5; N.T., 5/7/19, at 63-64, and the Magisterial District Judge admitted he did not issue an arrest warrant in this case, but testified that he issued a summons. *See* N.T. 1/7/20 (testimony) at 34-35, 37, 42-43, 48.

[14] These provisions were in place in 2011.

- 11 -

proved that the affidavit of probable cause was not sworn before the magistrate,[15] if true, this would have constituted a violation as well. **See** Pa.R.Crim.P. 513(B).[16]

However, failure to comply with the black letter of the Rules does not necessarily equate to a defect in jurisdiction or due process, and is only fatal where "the defect is prejudicial to the rights of the defendant." Pa.R.Crim.P. 109; **see also Jones**, 929 A.2d at 211 ("the existence of a procedural mistake, in and of itself, . . . does not divest the trial court of subject-matter jurisdiction"); **Commonwealth v. Bennett**, 124 A.3d 327, 332, 332 n.5 (Pa.Super. 2015) (applying Rule 109 to due process claim based on lack of seal on criminal complaint, finding no merit where defendant did not assert prejudice, was informed of the charges in a timely manner, and put forth a defense). Where a defect in the charging process has not caused prejudice, correction is liberally allowed. **See** Pa.R.Crim.P. 109, comment ("A complaint, citation, summons, or warrant may be amended at any time so as to remedy

---

[15] While Kearney elicited testimony at the PCRA hearing on this point, **see** N.T., 1.7.10 (testimony), at 53-57, he did not include it in his final argument to the PCRA court, **see** N.T., 1/7/20 (argument), at 1-24.

[16] Kearney relies on the affiant's testimony at trial, when, after defense counsel asked him whether he filed the affidavit with the magistrate on the same day that it states it was sworn, he answered, "It could have been a day or two before. What happened was we file through a supervisor and it gets put in a folder and gets taken down to the Magistrate." N.T., 4/26/12, at 9. We note this testimony does not provide enough information to prove that the Commonwealth did not comply with Rule 513(B), which allows for the swearing of affidavits using advanced communication technology. **See** Pa.R.Crim.P. 513(B).

any defect in form or content that is not prejudicial to the rights of the defendant. Nothing in this rule shall prevent the filing of a new complaint or citation and the reissuance of process").

Here, Kearney has not asserted he suffered any prejudice due to the court's failure to issue an arrest warrant, or resulting from the possibility that the affidavit was unsworn. Thus, even if Kearney's trial counsel had raised a timely objection to these procedural irregularities to the trial court, without a showing of prejudice, the remedy would not have been dismissal of Kearney's case. Therefore, just as the defects of which Kearney complains did not cause him prejudice, no prejudice ensued due to counsel's failure to raise them. Kearney has failed to prove his trial counsel was ineffective. **_See Commonwealth v. Ligon_**, 206 A.3d 515, 519 (Pa.Super. 2019) (requiring a petitioner to prove counsel's alleged ineffectiveness caused prejudice, "to the effect that there was a reasonable probability of a different outcome if it not for counsel's error") (quoting **_Commonwealth v. Grove_**, 170 A.3d 1127, 1138 (Pa.Super. 2017)). Kearney is due no relief. [17]

_____

[17] Kearney relies on **_In re Casale_**, 517 A.2d 1260 (Pa. 1986), which states that a trial court invokes subject matter jurisdiction by initiating a criminal case pursuant to the Rules of Criminal Procedure. 517 A.2d at 1261-62. However, in **_Casale_**, the Commonwealth did not comply with the Rule requiring that a criminal case be initiated by complaint or arrest, or give Casale formal notice of any charges before filing a motion to require him to submit to fingerprinting. Here, in contrast, the Commonwealth did institute proceedings against Kearney by filing a complaint, pursuant to Rule 502 of the Rules of Criminal Procedure, and Kearney does not contend he lacked notice of the contents of the complaint by the time of the preliminary hearing.

**Issue 6**

In his final issue, Kearney argues that the trial court calculated the standard range of the Sentencing Guidelines using an OGS of 10 for Kearney's conviction for Persons Not to Possess Firearms, and an OGS of nine for his conviction for Firearms Not to be Carried Without a License. Kearney argues this was error, as there was no express eye-witness testimony establishing that the silver handgun he used to commit the crimes was loaded at the time. *See* Kearney's Br. at 36-37 ("[N]o witness that was present at the residence of the alleged victim's on the date of June 30, 2011, had testified to the small silver handgun being loaded"). Kearney claims his trial counsel was ineffective for failing to raise this issue.

The PCRA court explained that it calculated the Guidelines ranges using the OGS applicable where the defendant possessed a loaded firearm, or had ammunition available. Pa.R.A.P. 1925(a) Opinion, filed 4/9/20, at 2 (citing 204 Pa. Code § 303.15). In concluding that the firearm was loaded, the court relied on the testimony of three people: Mellott, who identified the silver handgun presented at trial as the one Kearney had pointed at her in her home; Ashley Ramp, who testified that Kearney had possessed a handgun when she had given him and his co-defendant a ride later that day, and identified the silver handgun as that which fell out of her rental car the following day; and Trooper Rush, who testified that silver handgun identified by the witnesses contained a magazine with bullets when obtained by the police. *Id.* at 5-6 (citing N.T., 4/26/12, at 46-48, 118-20, and 158-59).

Counsel may be ineffective for failing to object to a court's miscalculation of the standard range under the Sentencing Guidelines. **See** **Commonwealth v. McMullen**, 530 A.2d 450, 452-53 (Pa.Super. 1987). However, it is a petitioner's duty to prove his counsel's ineffectiveness. **Ligon**, 206 A.3d at 519. It is also an appellant's duty to ensure the certified record is complete for the purposes of our review. **Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa.Super. 2006) (*en banc*).

Here, the transcript of trial is not in the certified record, except for the testimony of Trooper Gary Hibner, closing arguments, and the jury charge. We are therefore unable to verify whether the record evidence supports the facts which the PCRA court states it relied upon at sentencing. Nonetheless, our review is not hindered, as Kearney does not contest the court's summary of the trial testimony. Taken as true, this evidence was sufficient for the court to have found that the silver handgun was loaded at the time Kearney committed his crimes. Although none of the witnesses observed the ammunition at the time and place of the crimes, facts may be proven through wholly circumstantial evidence. **Commonwealth v. Hutchinson**, 947 A.2d 800, 806 (Pa.Super. 2008); **see, e.g., Commonwealth v. Plowden**, 240 A.3d 204, 2020 WL 5056629, unpublished memorandum at *3 (Pa.Super. 2020).

As Kearney has failed to prove that the trial court erred in using an OGS applicable where ammunition was available, Kearney has failed to prove that his trial court was ineffective for failing to lodge an objection.

Order affirmed.

Judge Musmanno joins the memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/09/2021